L. W. CLAY, *et al.*, v. HILDEBRAND BROS. & JONES, *et al.*

1. PRACTICE— *Only Question for Supreme Court.* Where no exception was taken to any ruling of the trial court, nor any motion made for a new trial, and where the evidence is not brought to the supreme court, and where none of the allegations of the pleadings of the parties in favor of whom the court below rendered judgment were denied or put in issue by anything contained in the pleadings of the other parties, and where on the trial each party introduced evidence and rested, *held,* that the only question to be considered by the supreme court is, whether the judgment that was actually rendered by the trial court could have been properly rendered under any circumstances under the pleadings in the case.

2. MORTGAGE; *Foreclosure; Appraisement; No Error.* Where a mortgage contained the words "appraisement hereby waived, or not, at the option

Clay v. Hildebrand Bros. & Jones.

of the parties of the second part, [the mortgagees,] their executors, administrators or assigns," and the court without objection, rendered judgment that the property be appraised and sold without giving six months' stay, *held*, that the court did not err as against the mortgagor.

3. JUDGMENT — *Obscure Entry — Construction.* Wherever an entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms.

4. STIPULATION *to Remove Prior Mortgages; Judgment, Not Erroneous.* Where Q. purchased property from C. and paid $550 therefor, which property was subject to prior mortgages, and Q. took a mortgage back from C. upon all the property covered by the prior mortgages, but took no note or other evidence of indebtedness, and this mortgage contained a stipulation in effect that C. should remove the prior mortgages within three years or pay back to Q. the said $550; and afterward, but within less than three years, the holders of the prior mortgages commenced an action to foreclose such prior mortgages, making C. and Q. and others parties, and Q. filed an answer setting up his mortgage and asking judgment thereon, and the court rendered personal judgments in favor of the holders of the prior mortgages and also in favor of Q., and ordered that the mortgaged property be sold and that the prior mortgages be first paid, and that from any surplus remaining after paying the prior mortgages Q. should be paid his $550: *Held,* That such judgment is not erroneous as between C. and Q.

5. FORECLOSURE; *Defective Allegations, Cured by Answer.* Where the holder of a note and mortgage commences an action to foreclose the same, making the mortgagees and several other persons defendants, and in his petition states with reference to such other persons that the "defendants, and each of them, have or claim some interest in and to the premises above described," and W., one of such other persons, without any objection, files a full answer, setting up all his claims and interests in and to the premises described in the plaintiff's petition, and a trial is had upon such pleadings, and both the plaintiff and W. introduced evidence, and findings are made and judgment rendered in the case, *held*, that, although the plaintiff's petition as against W. is defective, yet that W., by his answer and other acts, waives and cures all the defective allegations of the petition, and submits his case upon its merits.

6. MORTGAGE — *Foreclosure — Equity between Parties.* Where a mortgage to H. covers a large number of lots, including lots 13, 15, 17 and 19, and afterward another mortgage is executed to W., intended to be upon lot 15, but it is in fact executed to him upon lot 13, and afterward T. purchases lots 17 and 19 and then executes a mortgage upon such lots, and

T. at the time had no notice of the mistake in the mortgage to W., and afterward H. purchases the mortgage of T. on lots 17 and 19, and also the note which it secures, and afterward H. commences an action to foreclose both of his mortgages, making W. and T. among others, parties, and W. answers, setting up his mortgage, and asks that his mortgage be reformed so as to cover lot 15 instead of lot 13, and such is done, and the court renders judgment in favor of H. and W. and against the respective mortgagors, and orders all the property to be sold to satisfy such mortgages, and gives priority to the mortgages held by H. over the mortgage held by W., *held*, not error; that H.'s first mortgage should be first paid out of the proceeds of all the lots, except lots 15, 17 and 19; that if those lots will not pay H.'s first mortgage, then that T., as the innocent purchaser and owner of lots 17 and 19, has the right to demand that the proceeds of lot 15 shall be used for the purpose of paying H.'s first mortgage before the proceeds of lots 17 and 19 shall be so used.

*Error from Chase District Court.*

THE opinion states the nature of the action, the pleadings, and the facts. Trial at the July Term, 1884, and judgment for plaintiffs *Hildebrand Bros. & Jones.* The defendants *L. W. Clay* and wife bring the case here.

*C. N. Sterry,* for plaintiffs in error and defendant in error Walruff.

*Wood, Mackey & Smith, Madden Bros.,* and *Peyton, Sanders & Peyton,* for defendants in error Hildebrand Bros. & Jones.

The opinion of the court was delivered by

VALENTINE, J. : The principal questions involved in this case are with reference to the priority of liens and interests in real estate. The plaintiffs in the court below were E. A. Hildebrand, George O. Hildebrand and S. F. Jones, partners as Hildebrand Bros. & Jones, and the defendants in the court below were L. W. Clay, Polly Clay, Adam M. Clay, John Walruff, John Quinn, I. G. Thomas, Pauline Thomas, George Newman, Henry Harris, Tabitha Harris and Theodore Zoellner. L. W. Clay and Polly Clay, who are husband and wife, and the sole plaintiffs in error, seek by this petition in error to have the judgment of the court below reversed in

certain particulars; and John Walruff, who is one of the defendants in error, also seeks by a cross-petition in error to have the judgment of the court below reversed in certain other particulars. All the other parties in the action, both in this court and in the court below, seem to be satisfied with the judgment of the court below.

The plaintiffs in the court below, Hildebrand Bros. & Jones, commenced their action in the court below on June 4, 1884, and in their petition set forth three separate causes of action, to wit: 1. One upon a promissory note for $600, executed April 1, 1879, by Henry Harris and Tabitha Harris, who were husband and wife, to George Collett jr., due in five years, and secured by a mortgage on lots numbers 11, 13, 15, 17, 18, 19, 20, 22, 24, and 26, in block number 2, in Strong City, Chase county, Kansas. The mortgage was recorded April 1, 1879, and the note and mortgage became the property of the plaintiffs on May 8, 1884, by assignment. 2. One upon a promissory note for $1,400, executed July 6, 1880, by L. W. Clay and Polly Clay, to Henry Harris and Tabitha Harris, secured by a second mortgage on all the foregoing lots, which mortgage was recorded on July 14, 1880, and the note and mortgage became the property of the plaintiffs on May 12, 1884, by assignment. This note was to become due on July 6, 1887, or sooner if any default should be made in any of the stipulations contained in the mortgage; and several of such defaults were made, and the note became due before the commencement of this action. 3. One upon a promissory note for $900, executed March 27, 1883, by I. G. Thomas and Pauline Thomas, husband and wife, to L. W. Clay, due in six months and secured by a mortgage upon lots 17 and 19 of the foregoing lots, which mortgage was recorded April 17, 1883, and the note and mortgage became the property of the plaintiffs on September 6, 1883, by assignment.

The defendant John Quinn set forth in his answer, which was filed July 14, 1884, in substance that L. W. Clay and Polly Clay, on December 6, 1882, by their deed of general warranty, conveyed to him the west half of said lots 18, 20,

22, 24 and 26, and that to secure him against the two prior mortgages thereon — being the mortgages set forth in plaintiffs' first and second causes of action — they on the same day executed to him a mortgage upon all the lots mentioned in the plaintiffs' petition, except that portion of the lots conveyed to him by the Clays, conditioned that the Clays should, within three years from December 23, 1883, remove the said prior mortgages upon that portion of the lots conveyed to him. The sum of $550, which was the consideration for the foregoing deed, was to be paid back by the Clays to Quinn in case of their default to remove the foregoing mortgages. This answer also alleged that as the plaintiffs below had commenced to foreclose the two prior mortgages, such action created a breach in the condition of Quinn's mortgage, and he asked judgment for $550 and a foreclosure of his mortgage. Quinn's mortgage was recorded on December 26, 1882.

John Walruff, in his answer, which was filed June 30, 1884, set forth in substance that on December 17, 1881, L. W. Clay and Polly Clay, being indebted to E. A. Hildebrand, one of the plaintiffs below, in the sum of $850, secured the same by deeding to Hildebrand lots 11 and 13 of the foregoing lots; that on March 21, 1882, the Clays paid said indebtedness to Hildebrand and executed their note to John Walruff for $900, and to secure the payment of the same procured Hildebrand to convey by deed said lot 13 to John Walruff; that such deed to Walruff was intended to be, and was in fact, a mortgage to secure said note; that by the mutual mistake of the parties the deed from the Clays to Hildebrand and the subsequent deed from Hildebrand to Walruff, were made to cover lot 13, instead of lot 15, as was intended by the parties. Walruff demanded a money judgment for said amount of $900, and prayed that the said deed be declared a mortgage, and the same be reformed in its description of the property mentioned therein, so as to make it read "lot 15," instead of "lot 13," and that the same be foreclosed. The deed from Hildebrand to Walruff was recorded on March 25, 1882.

These are all the pleadings in the case. All the defendants

except Quinn and Walruff made default. The case was before the court without a jury, and the court made findings of fact substantially as set forth in the pleadings of the parties. There were some differences, however, between the findings and the allegations of some of the pleadings, which we may mention hereafter. Upon the foregoing pleadings and findings the court below rendered the following judgments, to-wit: (1) In favor of the plaintiffs, Hildebrand Bros. & Jones, and against Harris and wife, for $696; (2) in favor of the plaintiffs and against the Clays, for $665; (3) in favor of the plaintiffs and against Thomas and wife, for $996; (4) in favor of Quinn and against the Clays, for $550; (5) in favor of Walruff and against the Clays, for $996; (6) the mortgaged property was ordered to be sold to satisfy the foregoing judgments; and the plaintiffs were given the first and prior liens upon the property mentioned in their mortgages. Quinn was given only a second lien upon any of the property mentioned in his mortgage, and only a third lien as to the property mentioned in Walruff's mortgage. Walruff was given a second lien upon the property mentioned in his mortgage, as between himself and the plaintiffs, but was given a first and prior lien as between himself and Quinn and all the other defendants. Of the foregoing judgments, so far as they affect the Clays and Walruff, respectively, they now complain. All the other parties seem to be entirely satisfied with the judgments. These judgments were rendered on July 23, 1884.

I. Before proceeding to consider whether the court below committed any material error or not in any of its rulings, it would probably be well to state that no exception was taken to any of such rulings. Nor was any motion for a new trial filed in the case, or presented to or considered by the court. Nor does it appear that all or any considerable portion of the evidence presented to the trial court has been brought to this court. Indeed, no trial could have been had as between Clay and any of the other parties, for the reason that no issues were made up between them. The Clays were in default. Nor does it appear that any of the allegations of the plaintiffs' pe-

tition or of Quinn's answer were denied or put in issue by anything contained in Walruff's answer. It appears, however, that there was a trial as between the plaintiffs and Walruff and Quinn, and that each, respectively, introduced evidence and rested. And we might further say, that as the Clays and Walruff are represented in this court by the same counsel, it cannot be supposed that they wish to have any of the judgments disturbed as between themselves. Certainly, they do not consider their interests as antagonistic or conflicting. About the only question then for us to consider is, whether the judgments that were actually rendered by the court below in favor of the plaintiffs and Quinn could properly have been rendered under any circumstances under the pleadings in the case.

II. The first complaint, which is made by the Clays, is as follows:

"The court below erred in ordering the appraisement and sale of the real estate to satisfy the debt created by the note from the plaintiffs in error [the Clays] to Henry and Tabitha Harris, prior to the expiration of six months from the date of the judgment. The mortgage which authorized the sale of the real estate to pay this debt contained the words 'appraisement waived,' and hence execution of the judgment should have been stayed six months. (Code, § 453a.)"

The words of the mortgage above referred to read as follows: "Appraisement hereby waived, or not, at the option of the parties of the second part, [to wit, the said Henry Harris and Tabitha Harris,] their executors, administrators, or assigns." It will be seen that under the contract the holders of the mortgage, whoever they might be, and who are now the plaintiffs in this action, had the option in foreclosing their mortgage to have the property sold in accordance with the terms of the foregoing statute, or not, as they chose; and hence the court below did not err. And we might further say, that this was only a second mortgage, and that none of the other four mortgages mentioned in this action contained any such words as "appraisement waived." Under such other mortgages there can certainly be no claim that any stay of

judgment or of execution or sale should have been granted. Besides, no stay of any kind was asked for by any of the parties.

III. The next complaint, which is also made by the Clays, is as follows: "The court certainly erred in decreeing the judgment rendered against I. H. Thomas and Pauline Thomas a lien upon all the real estate, as was done by the decree in this case." If the assumption contained in the foregoing complaint is a correct interpretation of the judgment rendered by the court below, then of course the court below erred; for the mortgage executed by Thomas and wife covered only two lots, to wit, lots 17 and 19. We think, however, that the judgment is open to another and a fairer interpretation, and one which will render it correct and proper, and wherever a judgment is open to two or more interpretations, that interpretation should be given to it which will make it correct and proper, and which will make it correspond with the pleadings and the other proceedings in the case, and not an interpretation which will render it improper or erroneous. Also, wherever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms. (Freeman on Judgments, § 45; *Fowler v. Doyle*, 16 Iowa, 534; *Finnagan v. Manchester*, 12 id. 521; *Bell v. Massey*, 14 La. An. 843.) Now, construing the entry of the judgment in the present case in the light of the pleadings and the other proceedings, we think the judgment to enforce the lien of the Thomas mortgage will cover only lots 17 and 19; but as such entry is open to some criticism, we shall allow a modification of the entry to be made so as to make it clear and manifest. Only lots 17 and 19 can be used in paying the Thomas mortgage.

IV. The next complaint, which is also by the Clays, is as

follows: "The most grievous error committed by the court was the rendition of any judgment against the plaintiffs in error in favor of John Quinn upon his answer filed in said cause." We think the judgment is substantially correct. From Quinn's answer in the case, including his mortgage, it appears in substance that Quinn bought from the Clays the west half of lots 18, 20, 22, 24, and 26, in block 2, in Strong City, Kansas, and took a warranty deed from the Clays therefor and paid them therefor the sum of $550; and the mortgage set forth in his answer was given as a security that the Clays would relieve the property conveyed to Quinn from the prior mortgages thereon, or pay back to him the said sum of $550. These prior mortgages are for an amount vastly greater than the entire value of the property conveyed to Quinn, and possibly for an amount greater than the entire value of all the property covered by all the mortgages; and hence it was absolutely necessary that Quinn should set forth in his answer all his claims under his mortgage and have all his rights and interests in and to the property and against the Clays adjusted and determined in this action. If the Clays should allow the property to be sold to satisfy the prior mortgages, then Quinn, as against the Clays, is entitled to receive the said $550; but if the Clays should not allow the property to be sold, but should in some other manner satisfy the prior mortgages, then in doing so they would satisfy Quinn's claim and judgment, and Quinn would not in that case be entitled to receive the said $550. It appears, however, from the record, that they have totally abandoned the property to the holders of the prior mortgages; and there are four of such prior mortgages — the plaintiffs' three and Walruff's one. They have totally abandoned all the protection which they covenanted to furnish to Quinn, and have left him alone to contest his rights and interests with the holders of the prior mortgages. They have voluntarily and by their own defaults permitted judgments to be rendered against them on the prior mortgages, and permitted the property to be ordered to be sold beyond redemption. Indeed, they have voluntarily

chosen to place themselves in such a condition that they cannot perform their contract with Quinn. And this certainly gives Quinn the right to protect his own rights and interests under his mortgage and under the stipulations contained therein as against the Clays, and as against all others who might choose to set up any antagonistic interests. In other words, this gives a cause of action in favor of Quinn and against the Clays. (*Dill v. Pope*, 29 Kas. 289, and authorities there cited.) We think there is enough in the mortgage, along with the facts alleged in the pleadings, to entitle Quinn to the judgment, personal and otherwise, that was actually rendered by the court below in his favor and against the Clays. This disposes of the complaints of the Clays.

V. The first complaint made by the defendant Walruff is, that the court below erred in adjudging that the plaintiffs' liens were prior to his lien upon said lot No. 15; and this for the reason that the only allegations in the plaintiffs' petition affecting Walruff and his interests were that the "defendants, and each of them, (including Walruff,) have or claim some interest in and to the premises above described;" and the case of *Short v. Nooner*, 16 Kas. 227, is cited as authority therefor. Now we think the two cases are not parallel, and that the case cited is not authority for this. In that case the defendant was wholly in default, not having filed any answer of any kind in the case, while in this case the defendant Walruff was not in default, but made an appearance in the case and set up in detail all his rights and interests in the property. Besides, the plaintiffs in this case prayed as against all the defendants that their mortgages should be foreclosed; that their liens should be adjudged to be the prior liens upon the premises; and that each of the defendants should be forever barred and foreclosed from all right, title, estate, property, and equity of redemption in and to the said premises, and for such other and further relief as might be proper in equity and good conscience. In the case of *Short v. Nooner*, supra, no trial was had, nor could it have been under the pleadings in that case; while in the present case a full trial was had and evidence

was introduced by the plaintiffs Walruff and Quinn, and the court made findings upon such evidence, and then rendered judgment upon the pleadings, evidence, and findings. We think the allegations of the plaintiffs' petition as against Walruff are defective, but by Walruff's subsequent appearance in the case, his answer, his going to trial without objection, his introducing evidence as though the issues were all properly made up, and his making no objection in the court below at any time, we think he waived and cured the defective allegations of the petition and submitted his case to the court below upon its merits. (*Irwin v. Paulett*, 1 Kas. 418, 424; *Barrett v. Butler*, 5 id. 355; *Smith v. Burnes*, 8 id. 197; *Mitchell v. Milhoan*, 11 id. 617, 625, 626; *Barkley v. The State*, 15 id. 99, 107; *Dresser v. Wood*, 15 id. 362, 363; *K. P. Rly. Co. v. Yanz*, 16 id. 586; *Campbell v. Coonradt*, 22 id. 705; *Grandstaff v. Brown*, 23 id. 176, 178; *Bierer v. Fretz*, 32 id. 330, 337, 338.) We think it is now too late for Walruff to complain that the petition was not sufficient.

VI. The second complaint made by Walruff has been sufficiently answered by what we have already said concerning the second complaint made by the Clays. The third complaint made by Walruff is, that the court below erred in determining the priority of liens and in ordering a sale of the property without reference to the order in which the property should be sold, merely providing that the proceeds should be used, first, to satisfy the plaintiffs' judgments, and then, if there was any surplus, that it should be used in the payment of Walruff's judgment. As to the first two mortgages held by the plaintiffs, there can certainly be no question as to the correctness of the judgment of the court below. The liens of those two mortgages are unquestionably prior to the lien of the Walruff mortgage. Those two mortgages were not only executed and recorded prior in time to the Walruff mortgage, but the Walruff mortgage was executed in express subjection to them. The Walruff mortgage, as it is set forth by his own counsel, is in form a warranty deed, conveying the property with covenants of warranty, against incumbrances and against

the claims of all persons "except what mortgage may now be against it." Besides, Harris and wife, who executed the first note and mortgage, have an unquestionable right to have such note and mortgage satisfied out of the mortgaged property, so as to prevent the plaintiffs from levying upon their other property to pay the debt; and also Harris and wife, to whom the second note and mortgage were given, and which they assigned to the plaintiffs before due, have the right to have such note and mortgage paid out of the mortgaged property. But it is claimed that even if the plaintiffs' first two mortgages are prior to the Walruff mortgage, still that the Walruff mortgage was executed prior to the execution of the note and mortgage executed by Thomas and wife to Clay, and constituting the plaintiffs' third cause of action, and therefore that Walruff's mortgage should be held to be prior to the Thomas mortgage. Now the two mortgages do not cover the same lots or the same property. The Thomas mortgage covers lots numbers 17 and 19, while the Walruff mortgage originally covered lot number 13, but was afterward by the decree of the court made to cover lot number 15, instead of lot number 13. And hence there is not much room for adjusting the priorities of lien as between these two mortgages. The lien of one is on lots 17 and 19, while the lien of the other is on lot 15. But it is further claimed that as the plaintiffs' first two mortgages covered all the lots, including lots numbers 15, 17 and 19, that the plaintiffs should be required to sell lots numbers 17 and 19 to satisfy their first two mortgages before selling lot number 15; and that if the proceeds of the sale of all the lots except lot 15 should be sufficient to pay the plaintiffs' first two mortgages, then that lot 15 should be reserved to pay the Walruff mortgage. Now what the evidence upon this subject was, we have no means of knowing, for there is no showing that it has all, or any considerable part thereof, been brought to this court. It is shown, however, that the plaintiffs did introduce evidence, that Walruff introduced evidence, and that Quinn introduced evidence; and it may have been shown from this evidence that the priorities existing

45 — 34 KAS.

between the various mortgages were just what the court below determined them to be. The parties tried the case just as though all the allegations of Walruff's answer had been put in issue, and hence it must now be so considered. (*Bent v. Philbrick*, 16 Kas. 190; *Hopkins v. Cothran*, 17 id. 173; *Netcott v. Porter*, 19 id. 131; *Bashor v. Nordyke*, 25 id. 222, 224.)

As before stated, Walruff's mortgage was in form a deed, and Walruff alleges that it was executed by E. A. Hildebrand and wife, but the court below found that it was executed by L. W. Clay and wife; but by whomsoever it was executed, it was in fact a mortgage, and was originally a mortgage on lot 13, and not on lot 15, and was long after its execution and after the execution of the Thomas mortgage, reformed by the decree of the court so as to make it a mortgage on lot 15, instead of on lot 13. Now who knew of this mistake in Walruff's mortgage prior to the time when he alleged such mistake in his answer? Did the plaintiffs know it? Or did Thomas and wife know it? There is no finding that either of these persons knew it; and we can hardly say that there is any evidence tending to show that either knew it. There is certainly not the slightest evidence, directly or indirectly, expressly or impliedly, tending to show that Thomas and wife had any knowledge of this mistake. Besides, the notes and mortgage were negotiable, and the plaintiffs purchased the same before due, and if they had no knowledge in fact of the mistake in the Walruff mortgage, then why should they be compelled to reserve the fund arising from the sale of lot No. 15 to pay Walruff's mortgage instead of reserving the fund arising from the sale of lots Nos. 17 and 19 to pay the Thomas mortgage?

But, aside from the claims or interests of the plaintiffs and the Clays, have not Thomas and wife the right to have the funds arising from the sale of lots 15, 17 and 19 applied in the above manner? Have they not the right to claim that lot 15 shall be sold and applied in payment of the plaintiffs' first two mortgages before lots 17 and 19 shall be so sold and applied, and that if the proceeds of the sale of any lot or lots may be reserved from the payment of the plaintiffs' first two

mortgages, it shall be lots 17 and 19, and not lot 15? Have they not a right to claim that the proceeds of the sale of lots 17 and 19 shall be applied in the payment of the note and mortgage which they gave and upon which a personal judgment has been rendered against them, as well as a judgment to sell their lots Nos. 17 and 19? Thomas and wife are the owners of lots Nos. 17 and 19; and when they purchased these lots and gave the note and mortgage on them which now constitute the plaintiffs' third cause of action, the records of the county did not show that Walruff had any claim or interest in or to lot No. 15; and probably they did not have any knowledge of any such claim or interest. It is seemingly admitted that lot No. 15 is worth much more than lot No. 13, and therefore it would be unjust to Thomas and wife to require that their lots, Nos. 17 and 19, should be sold to satisfy the plaintiffs' first two mortgages before lot No. 15 is so sold. When they purchased lots Nos. 17 and 19 they of course expected from the records that lot No. 15, which is a valuable lot, would be used along with the other lots in satisfying the two prior mortgages, and if it is not so used, it will work injustice to them. Besides, not only are their lots Nos. 17 and 19 subject to the payment of the note and mortgage constituting the plaintiffs' third cause of action, but all their property, subject to execution, is likewise subject to the payment of the debt evidenced by such note and mortgage. A personal judgment against Thomas and wife as well as a judgment against their lots was rendered, and rightfully rendered, by the court below; and therefore if lot 15 is reserved to pay the Walruff mortgage instead of at once applying it on the two prior mortgages, they may not only lose their lots 17 and 19, but may have to sacrifice much of their other property. The court below granted to Walruff the equity of having his mortgage reformed so as to make it a mortgage on lot No. 15, instead of a mortgage on lot No. 13, but in granting this equity, the court granted it in such a manner as not to interfere with the prior equities, rights and interests of others; and this we think was right. (1 Jones on Mortgages, § 99; 1 Story's Eq. Jur.,

§165.) Now while it is possible that the court below may have committed some slight error, yet from the record as it is brought to this court we cannot say that it did. As to any possible defect in the findings, see *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.*, 18 Kas. 171, 188. Also, from the condition of the record we do not think that we are called upon to consider the matter suggested in the last paragraph of the brief of counsel for Walruff. We would, however, refer to the last two pages of the case of *Schermerhorn v. Mahaffie and Williams*, ante, p. 108, as presenting matters of a slightly similar character; though probably counsel on both sides of this case, and in both the district court and in this court, have done their entire duty to their clients and others. We might also state in this connection, that it does not appear from the record that any of the counsel appearing in this court had any connection with the case in the court below. The judgment of the court below will be affirmed, except that it may be made to express more clearly what we think it was intended to express.

All the Justices concurring.