WETZSTEIN, Respondent, v. BOSTON & MONTANA
CONSOLIDATED COPPER & SILVER
MINING CO., Appellant.

(No. 1,671.)

(Submitted October 8, 1901.   Decided December 23, 1901.)

*Mines—Recovery of Interest Therein—Injunction Pendente
Lite—Order to Show Cause—Evidence — Admissibility—
Record of Former Judgment.*

1. *Obiter.* The incorporation in a complaint in one case of the allegations
   contained in a complaint in another and separate cause, naming other par-
   ties as defendants by reference merely, is of very questionable propriety.
2. On appeal the supreme court will not undertake to determine whether the
   evidence was insufficient to warrant the issuance of an injunction *pendente
   lite,* when the order granting the same must be reversed on other grounds.
3. On the hearing of an order to show cause why an injunction *pendente lite*
   should not issue, for which application was made by complainant on the
   filing of his complaint, the proposed answer of defendant to the suit, and
   the proposed answer of defendant to another suit concerning the same mine,
   the complaint of which had been made a part of the present complaint,
   were properly rejected, where the verifications of the same were on infor-
   mation and belief; positive verifications being required.
4. On the hearing of an order to show cause why an injunction should .not
   issue to restrain defendant from operating a certain mine pending a suit
   for an interest therein, it was error to reject, as irrelevant and immaterial,
   the pleadings, judgment and findings of a prior action which adjudicated
   the ultimate rights of the parties in the subject of the controversy.
5. On the hearing of an order to show cause why an injunction should not
   issue to restrain defendant from operating a certain mine pending a suit
   begun in 1901 for an interest therein, the record of a prior action between
   the parties in regard to the same mine, wherein it appeared that the deed
   alleged in the present suit to be fraudulent and to have been executed by
   mistake was in existence in 1885, and that ores had been removed from
   the mine for at least three years before this application was made, was
   improperly rejected; the same being material, together with other facts,
   on the question of plaintiff's laches in making the application.
6. On the hearing of an order to show cause why an injunction should not
   issue to restrain defendant from operating a certain mine pending a suit
   for an interest therein, the record of a prior action wherein it appeared
   that an injunction had been denied on the same facts and issues as were
   involved in the present suit was admissible as barring a second applica-
   tion for an injunction on the same facts, where the court was doubtful of
   the good faith of the application, and of the merits, and of the plaintiff's
   laches.
7. Where, on the hearing of an order to show cause why an injunction should
   not issue, restraining defendant from operating a certain mine pending a
   suit for an interest therein, it appeared that several suits between the

same parties had been brought concerning this same mine, in one of which an appeal was pending, the affidavit of the defendant's attorney, made on his knowledge, as to the history of the litigation, was admissible, as tending to make clear the identification of the parties and the subject-matter in the several suits.

*Appeal from District Court Silver Bow County; William Clancy, Judge.*

SUIT by Adolph Wetzstein against the Boston & Montana Consolidated Copper & Silver Mining Company. From an order granting the plaintiff an injunction *pendente lite,* restraining the defendant from operating its mines, the defendant appeals. Reversed.

*Messrs. Forbis & Evans,* for Appellant.

*Messrs. McHatton & Cotter, Messrs. Toole & Bach, Mr. Jas. M. Denny* and *Mr. Robert B. Smith,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff to obtain a decree awarding to him an undivided one-fourth interest in the Comanche lode claim (patented), situate in Silver Bow county, and for an accounting for ores extracted and removed therefrom by the defendant, and converted to its own use. Upon the filing of the complaint an application was made for an injunction to restrain defendant from extracting or removing ores *pendente lite,* and, after a hearing upon an order to show cause, the court made an order granting the injunction as prayed. From this order the defendant has appealed.

The principal questions presented for examination arise upon the rulings of the district court in excluding certain evidence offered by defendant. The purport of these rulings is best understood by reference to the allegations upon which the plaintiff bases his claim of title. Omitting formal matters, a brief synopsis of these is the following: That plaintiff is, and since

March 21, 1894, has been, the owner and entitled to the possession of an undivided one-fourth of the Comanche lode claim, which is valuable for the silver and copper ores contained therein; that it was located on January 19, 1879, by one D. N. Upton and one N. L. Turner, each thus becoming entitled to an undivided one-half interest; that Upton therafter, and on February 28, 1889, conveyed an undivided one-fourth interest to one George H. Tong; that he never thereafter conveyed any other interest to any person until November 16, 1893, when he sold and conveyed his remaining one-fourth interest to one H. L. Frank, who thereafter, and on March 21, 1894, conveyed the same to the plaintiff; that though said Upton had not sold any interest except to Tong, as aforesaid, said Tong, one Patrick Largey, one Howard H. Zenor, and one Nicholas J. Bielenberg, on or about June 3, 1890, applied to the United States for a patent to the said claim, fraudulently excluding Upton from the application, intending thereby to obtain for themselves title to the interest belonging to Upton; that Upton was at that time the owner of record of an undivided one-fourth interest; that notwithstanding this fact they procured a patent from the United States for themselves, fraudulently excluding Upton therefrom; that they thus became trustees of the legal title of the interest belonging to Upton; that the patentees thereupon organized the Comanche Mining Company, they becoming the officers and stockholders thereof; that the said company was organized for the purpose of taking title to the claim patented as aforesaid, and that the patentees thereupon conveyed the said claim to it by quitclaim deed, the only consideration therefor being capital stock of the company which they caused to be issued to themeselves; that the company took the conveyance of the property with full knowledge of Upton's rights; that the said company on November 10, 1896, conveyed the claim to the defendant herein, but that the defendant took the conveyance with full knowledge of plaintiff's rights under his conveyance from Upton through Frank; that the defendant thereupon entered into the exclusive possession of the claim

so conveyed to it, and has ever since excluded the plaintiff therefrom, claiming to be the exclusive owner, and denying that the plaintiff has any right or interest therein; that defendant is still in exclusive possession of the property, and is mining, carrying away, and converting to its own use large quantities of ores therefrom, and will continue to do so, refusing meanwhile to account to the plaintiff for any portion of them or of their value; that it has already taken therefrom ores of a value exceeding $4,000,000; that the plaintiff has no means of knowing the exact amount of the ores so being taken from day to day, and that, unless a receiver be appointed and the defendant enjoined, he will be compelled to rely upon the good faith of the defendant when it is finally made to account; that the defendant will not, as plaintiff believes, render a correct account; that it is also engaged in working other mines, and is mixing the ores from the Comanche claim with the ores from such other mines, and is treating and smelting them all together, though the ores from the Comanche are of much greater value; that the ores from the latter are of great richness, and that there can be easily extracted of them during each year an amount of the value of $1,000,000; that the defendant is about to convey all its property, including the Comanche claim, to a corporation formed outside of the state of Montana, thus increasing the danger of irreparable loss and damage to the plaintiff unless the defendant be required to deliver one-fourth of said ores to a receiver; that plaintiff has demanded that he be let into possession of the Comanche claim jointly with the defendant, but that his demand has been refused; that he has likewise demanded that defendant deliver to him on the dump one-fourth of all ores extracted, offering to pay the defendant one-fourth of the expenses of mining the same, but that this demand has likewise been refused; that plaintiff is able, ready, and willing to pay his part of the expense of working the property; that he and defendant are in fact cotenants in the property, the defendant owning an undivided three-fourths interest therein; that defendant is extracting the ores aforesaid through workings not on the prop-

erty, which fact prevents plaintiff from ascertaining the amount and value of them; and that prior to the commencement of this action the plaintiff had instituted another action against the defendant and others for the reformation of a deed from Upton to Patrick Largey, now deceased, and for various other reliefs, as will appear by the complaint filed with the clerk of this court, to which plaintiff refers and makes part hereof, without setting forth the same at length, but with the same force and effect as if fully set forth herein.

The complaint referred to in the latter part of the foregoing synopsis is copied into the transcript as a part of the complaint in this cause. Besides the Boston & Montana Consolidated Copper & Silver Mining Company, there are named as defendants therein David N. Upton, George H. Tong, Howard H. Zenor, Nicholas J. Bielenberg, Henry L. Frank, Lula F. Largey, administratrix of the estate of Patrick Largey, deceased, Charles S. Warren, and the Comanche Mining Company. It sets forth, in substance, all of the allegations contained in the foregoing synopsis touching the location of the Comanche claim; the proceedings to obtain a patent by Tong and others; the alleged fraudulent exclusion of Upton from the application and from the patent; the various conveyances from Upton to· the plaintiff; the conveyances from the patentees to the Comanche Company, and from that company to the defendant, with the allegation of knowledge on the part of the company and the defendant as to Upton's rights at the time the respective conveyances were made to them; the exclusive possession claimed and held under its conveyance by the defendant; the mining operations conducted by it; its intention to convey all of its property, including the Comanche claim, to a corporation formed outside of the state of Montana; the cotenancy of plaintiff and the Boston & Montana Consolidated Copper & Silver Mining Company,—and then continues as follows, alleging by way of information and belief that David W. Upton, before he had made the conveyance to Tong of an undivided one-fourth interest, and before he conveyed the other one-fourth interest

belonging to him to H. L. Frank, relocated a claim upon the ground embraced by the Comanche claim, which he called the "Grand Prize," and thereafter, at the request of Largey, executed a deed to said Largey by which he intended to convey to the said Largey an undivided one-fourth interest in the Grand Prize claim, whereas in fact, but by mistake on his part, which was known to Largey at the time, he actually conveyed a one-half interest; that at the time he made the conveyance to the said Largey it was represented to him by Largey that the conveyance in no wise deprived him of any interest then owned by him in the Comanche lode claim; that he relied upon such representations made by Largey; that the deed then executed had been prepared under the instructions of Largey, and was understood by Upton to convey only an undivided one-fourth interest in the Grand Prize lode claim; that thereafter Upton discovered that the deed, upon its face purported to convey an undivided one-half interest; that he immediately, upon his discovery of the fact, called the attention of Largey to the error made, and that thereupon Largey agreed with him that it was an error, and that Largey would rectify it by a reconveyance to Upton of an undivided one-fourth interest; that Largey never made the said conveyance as he agreed; that the relocation made by Upton of the Comanche claim under the name of the "Grand Prize Lode Claim" was for the purpose of avoiding the consequences of an adverse decision which was anticipated as to the location of the Comanche lode claim, at that time involved in litigation; that thereafter the location of the Comanche lode claim was held good, and thereupon the Grand Prize location became nugatory and was abandoned both by Upton and Largey and all the other parties interested; that heretofore, and long prior to the commencement of this action, and after plaintiff became the owner of the said one-fourth interest in the Comanche claim theretofore owned by Upton, the plaintiff attempted to assert his title to the said interest, when, to his surprise, it was claimed that he, as the successor of said Upton, was es-

topped from asserting any title thereto by the deed of Upton to Largey of the one-half interest in the Grand Prize claim, and that, because said Upton had deprived himself of any interest in the Comanche claim, the deed from Upton to Frank and from Frank to Wetzstein was void; that the deed from Upton to Largey of the one-half interest in the Grand Prize claim was fraudulent and void; that, in taking the conveyance of the one-fourth interest in the Comanche claim from Upton through Frank, the plaintiff relied upon the record of Upton's title, as well as upon the adjudications by the courts that the location of the Comanche claim was valid; that there was no record of any conveyance by Upton to any other person than that to Frank, from whom plaintiff purchased; and that before the bringing of this action Patrick A. Largey died intestate. and Lula F. Largey was appointed and qualified as administratrix upon his estate.

No allegation is made in either complaint of any wrongdoing by defendant Warren, the only reference to him being a statement in both complaints that at the time the application for patent was made he was the owner of an undivided one-eighth interest; he, Largey, Zenor, and Bielenberg having obtained the interest of Turner, the colocator with Upton, by conveyance from him.

The prayer of the first complaint is for a decree adjudging the plaintiff to be the owner of an undivided one-fourth interest in the Comanche claim; that all adverse claims of the defendant are without right; that the defendant be enjoined, pending the hearing, from mining and taking away ore; and that the plaintiff have general relief.

The prayer of the second complaint is for a decree adjudging the action of Tong and his associates in excluding Upton from the patent to be fraudulent and void; that the one-fourth interest owned by Upton in the Comanche claim under the location was not conveyed to Patrick A. Largey by the deed to the one-half interest in the Grand Prize claim; that, if it be held that this deed conveyed any interest whatever, it be reformed

so as to show the true intent of the parties at the time it was made, and that the reformation be so made as to relate to the date of the conveyance by Upton to Largey; that it be adjudged that, at the time Upton conveyed or executed the deed to a one-fourth interest in the Comanche claim to H. L. Frank, he was the sole owner and entitled to the possession of the interest so conveyed, and that plaintiff by his conveyance from Frank became entitled to the said interest; that plaintiff's title thereto be forever quieted; that the plaintiff and the Boston & Montana Consolidated Copper & Silver Mining Company be declared to be cotenants in the Comanche claim, the plaintiff being entitled to a one-fourth interest, and the said corporation to the remaining interest; and that the plaintiff have such further relief as to the court may seem proper.

Before proceeding to discuss the questions presented by appellant, we stop to remark that no question was made in the court below, nor is any made in this court, as to the form of the complaint, or as to the sufficiency of the allegations contained in it. To say the least of it, the incorporation in the complaint in this case of the allegations contained in the complaint filed in another and a separate cause, naming other parties as defendants by reference, merely, is of very questionable propriety. Inasmuch, however, as the appellant makes no question as to the method adopted in this regard, we pass it without further comment.

1.    The appellant contends that the evidence adduced at the hearing was insufficient to warrant the issuance of an injunction. We shall not now undertake to determine the merits of this contention, for the reason that the order must be reversed on other grounds. By the time another hearing can be had in the district court, a wholly different situation may be presented, and we would avoid prejudicing the rights of the parties as they may then be made to appear. Furthermore, as will appear from matters referred to hereafter, it may be that the rights of the parties will have been finally determined before

another hearing can be had, in which event such hearing will be entirely unnecessary.

2.    The plaintiff introduced evidence tending to support the allegations of his complaint.  Thereupon the defendant offered to introduce as evidence its proposed answer to the complaint in this cause, and also the proposed answer in the cause the complaint in which is adopted as a part of the complaint in this cause by reference.  This latter cause is designated in the district court records as No. 9,081.  These answers are verified by one C. S. Batterman, superintendent of the defendant, upon his information and belief.  Upon objection, they were excluded as incompetent.  Defendant assigns error.  The ruling was correct.  *Ex parte* affidavits may be used by the plaintiff as evidence in support of an application for an injunction. (Code of Civil Procedure, Sec. 872.)  Likewise they may be used by defendant in resisting the application.  (*Id.* Sec. 875.) In the latter case oral evidence may also be resorted to by both parties, but the answer, if verified, has the effect only of an affidavit.  (*Id.* 877.)  It does not follow, however, that the ordinary rules of evidence are not to be observed in the use of such affidavits.  It was said in *Thompson* v. *Ocean City Railroad Co.* (N. J. Ch.), 37 Atl. 129: "It would seem that the same rule must be applied to distinguish between testimony that is admissible and testimony that is nonevidential, whether such testimony is found in affidavits to be used as a ground for obtaining an injunction, or the testimony is produced in open court by the examination of witnesses to support any litigated fact."  In *Bennett Bros. Co.* v. *Congdon,* 20 Mont. 208, 50 Pac. 556, this court, speaking through Mr. Justice Hunt, said: "A court is sometimes called upon to grant a temporary restraining order to show cause, upon papers or testimony which at first examination appear to be sufficient, yet afterwards are held not to be.  In certain instances, haste in issuing a restraining order is necessary to prevent the doing of an act which, if done, would apparently work irreparable injury to another. A judge, under such circumstances, must do the best he can,

by acting upon the testimony at hand. But when the return day has come the parties may offer strictly legal testimony for the purpose of continuing or dissolving the order, and if they do, it is the duty of the court to hear and consider it, and to exercise its legal discretion upon all that is competent and properly before it." Mr. Justice Hunt cites *Thompson* v. *Railroad Co.,* and approves the passage quoted *supra* as embodying a correct statement of the rule applicable to such affidavits. The use of affidavits in preliminary injunction proceedings, whether it finds its sanction in the usages of courts of equity, or is founded upon express authority of the statute, has for its purpose the expediting of the hearing in order that relief may be quickly obtained from impending injury, for which, if it were allowed to occur, the law could not afford adequate remedy. The rule goes no further, however, than to excuse the complaining party from the necessity of presenting his evidence in the ordinary way; that is, by the testimony of witnesses sworn an l examined orally at the hearing in the presence of the adverse party, or by means of depositions taken upon notice under the provisions of the statute. The statute regulating the issuance of injunctions without notice (Code of Civil Procedure, Sec. 872) recognizes this principle, by providing that no injunction shall issue upon the complaint alone, unless it be verified and the material allegations setting forth the grounds therefor be made positively, and not upon information and belief. Not only must the allegations be made in the form of positive statement, but the affidavit of verification must also be positive, so that the action of the court or judge in making the order in the first instance may be based upon an unequivocal statement of fact. (*Butte & Boston Consol. Min. Co.* v. *Montana Ore Purchasing Co.,* 24 Mont. 125, 60 Pac. 1039.) If the complaint does not meet these requirements, no injunction can be granted, unless there be presented in support of the application an affidavit of some one who speaks from his own knowledge. The same principle must, of necessity, apply in contested applications for injunction, and there is no reason why the rule should

be relaxed in favor of the defendant when he appears to resist the application. A witness sworn to testify orally would not be permitted to depose to mere hearsay statements, neither may an affidavit embodying only hearsay statements be considered of any evidentiary value. The court in such proceedings must deal with facts established under recognized rules of evidence, except so far as the method of presenting them may be modified by recognized usages of courts of equity, or by express statutory provision. It is only by a consideration of facts so produced that the court may be moved to exercise its discretion in granting or refusing the demanded relief. (*Bennett Bros. Co.* v. *Congdon, supra,* and cases cited; 2 Cyc. Law & Proc. 35, notes "a" and "b.")

3. The defendant offered also the pleadings, judgment and findings in a cause designated on the district court calendar as No. 5,050, wherein the plaintiff in this cause was plaintiff, and the Comanche Mining Company and all the persons named as defendants in cause No. 9,081, *supra,* except Upton, were named as defendants, besides certain other parties alleged to be interested in the Comanche claim as privies of the other defendants. This suit was begun on March 21, 1894, and the record was offered for the purpose of showing that it was sought by plaintiff therein to obtain a decree declaring the defendants trustees of the legal title of an undivided one- fourth interest in the Comanche claim, for the use and benefit of plaintiff, upon the same facts which are alleged in the pleadings in this cause. There were included in the same offer the original complaint, demurrer, application for injunction, order denying the same, and final judgment on demurrer in another cause, numbered 8,304, wherein the plaintiff herein was plaintiff, and the defendant herein was named as defendant. In that cause a judgment was sought decreeing the plaintiff to be the owner of the same undivided one-fourth interest in the Comanche claim involved in this cause and in No. 5,050, *supra.* This second record was offered for the purpose of showing this fact, and that, basing his right of recovery upon the same facts alleged

in the complaint in this cause, except as to the mistake in the Grand Prize deed, the plaintiff had applied for and been denied relief by way of a preliminary injunction. In connection with the foregoing records there was also offered an affidavit of L. O. Evans, one of defendant's counsel. This affidavit gives a succinct history of the controversy between plaintiff, as grantee of Upton, and the original patentees of the Comanche claim, the Comanche Mining Company, and the defendant, the present holder of the legal title, and tends to identify both of the actions referred to as actions between the same parties, or their privies, and as involving the same interest in the property under the same claim of title. The affidavit further shows that cause 5,050 is pending in this court upon appeals from the judgment and an order denying a new trial, and that upon appeal to this court from the order denying an injunction in cause 8,304 the order was affirmed. These original files and the affidavit were, upon objection of the plaintiff, excluded from the evidence as incompetent and immaterial. We think the ruling erroneous. The record in 5,050 shows that the plaintiff founded his right to recover therein upon the allegation that Upton was one of the original locators of the Comanche claim, that he had never conveyed any interest therein except a one-fourth interest to Tong, and that he had been fraudulently excluded from the patent by Largey and his associates, although at the time of the application he appeared of record to be the owner of a fourth interest. It further shows that, besides a denial of many of the affirmative allegations of the complaint, separate defenses were interposed as follows: (1) That the plaintiff had no interest in the Comanche claim, for the reason that in 1880, a short time after the location was made, Upton had conveyed the interest claimed by plaintiff to one Collins, who on or about August 6, 1884, had conveyed to Patrick A. Largey, and therefore that the deed by Upton to Frank, plaintiff's grantor, conveyed no interest whatever; (2) that on or about August 6, 1884, Upton represented to Largey that Collins owned the interest in controversy; that he induced Largey

to purchase the same and take a deed therefor from Collins
for a large sum of money; that Largey, with Upton's knowl-
edge, expended money in protecting the title to the claim and
in developing it; and that by his acts in this regard the said
Upton had estopped himself and his grantees forever from mak-
ing a claim to any interest therein; and (3) that the Comanche
claim was also designated and known by Upton as the "Grand
Prize Claim;" that on November 23, 1885, he had conveyed to
Largey a one-half interest therein; to Zenor, named as defendant,.
a one-fourth interest; and subsequently in 1889, to defendant
Tong the remaining one-fourth interest; that by these convey-
ances the said Upton had parted with all interest that he ever
had in the ground covered by the Comanche claim, and there-
fore that the plaintiff acquired no interest whatever by his con-
veyance from Upton.  It appears that the cause was tried upon
the issues made upon these defenses by denials on the part of
the plaintiff as to the two first, and by an allegation, by way
of avoidance as to the last, that the Grand Prize location
was made in order to hold the ground covered by the Comanche
claim in case it should be adjudged, in an adverse suit then
pending between the claimants under that location and their
adversaries who claimed under another location, known as the
"Smelter Claim," that the Comanche location was invalid, and
that, the Comanche location having subsequently been held
to be valid, the Grand Prize location was abandoned by all the
parties in interest.  It also appears that the court made special
findings upon all of these issues.  It found upon the first two
in favor of the defendants, namely, that in 1880 Upton con-
veyed to Collins the interest now claimed by plaintiff; that on
or about August 6, 1884, Upton induced Largey, by represent-
ing to him that Collins owned the interest, to buy it from Col-
lins, with other property, for the sum of $2,500, and that Lar-
gey in so purchasing relied upon Upton's representations; and
that Upton received a commission of $100 for negotiating the
purchase from Collins.  Upon the third defense the issue was
found in favor of plaintiff,—that although the Grand Prize

location was made for the benefit of Upton, Largey and their associates, and interest therein conveyed to Largey, Zenor and Tong, as claimed by defendant, yet, when the Comanche location was held valid, all the parties, including Largey and Upton, had abandoned the Grand Prize location as nugatory. It was adjudged and decreed upon these findings that, at the time the patent was issued to Largey and his associates, Upton had no legal or equitable interest in the property, and that the plaintiff acquired no interest whatever therein by virtue of the conveyance from Upton after the patent was issued. It thus appears that the ultimate question involved in cause 5,050 (that is, the ownership of the interest in question) was the same question, fundamentally, as the one involved in this case.

This question was agitated between the plaintiff and the grantors of the defendant. It was adjudged in favor of the latter upon two distinct grounds, either of which, so long as the judgment stands, is conclusive against the claim of the plaintiff, without regard to the character of the Grand Prize deed; for, if the judgment should finally be affirmed, it would forever preclude the plaintiff from obtaining a reformation of that deed, whether it was executed under a misapprehension by Upton or not. The adjudication that the Grand Prize location was abandoned because the ground covered by it was already covered by the Comanche, a valid location under which Upton and his associates obtained title, was necessarily an adjudication that none of them obtained any title under the Grand Prize location. This is binding upon the parties to that judgment, as well as upon their privies. The defendant, so long as the judgment stands, could not be heard to say that it obtained any title under it; neither should the plaintiff, who tendered the issue, and after it had been determined in his favor, be heard to assert that it stands as an impediment to his rights, which the court should remove by a separate decree. If that judgment were affirmed, and were properly pleaded as a bar to this action, the court would be compelled to hold it conclusive upon the plaintiff. It meets all the requirements of the statute (Code of Civil

Procedure, Secs. 3196, 3199) which declares the rule as to what matters are to be deemed concluded by a former judgment between the same parties and their successors in interest. The question here, however, is not whether the judgment is conclusive upon plaintiff's right to maintain this action,—as defendant contends; the question is, was the judgment admissible as a fact of import for the court to consider with other evidence in determining plaintiff's right to an injunction? Appearing, as it does, to have adjudicated the ultimate rights of the parties in the subject of the controversy, it falls clearly within the principle of *Boston & Montana Consol. Copper & Silver Min. Co.* v. *Montana Ore Purchasing Co.,* 25 Mont. 87, 66 Pac. 752, recently decided by this court, and furnishes a reason which would ordinarily, in the discretion of the court, be sufficient to warrant a denial of the injunction.

The record was admissible upon other grounds. It was contended at the hearing that the injunction should not issue because, whatever ultimate right the plaintiff might finally be found to have, he had failed to apply promptly for relief, and that his own laches precluded any relief by way of preliminary injunction. Had the evidence been admitted, it would have appeared from it and other facts submitted that though the Grand Prize deed had been in existence since 1885, and though, at the trial of cause 5,050 in the district court, Upton was confronted with this deed, and interrogated fully about it, and though the removal of ores from the Comanche claim had been going on for at least three years at the time this application was made, no claim was ever made by him or the plaintiff until the bringing of this suit, in February, 1901, that the deed was fraudulent or was executed by mistake. It is of some significance, also, that the deed was an important element in controversy at the trial of that cause, and yet no mention was made of the mistake in its execution in 1885. These facts were proper to be considered, with the other facts submitted, in determining whether the plaintiff had slept upon his rights and was not entitled to preliminary relief.

The record in cause 8,304 was admissible as tending to show, in connection with the record in 5.050 and the other evidence in the case, that an injunction had been previously sought and denied in that suit upon the same facts and issues which are involved in this case. It shows that the plaintiff attempted to assert title to the same interest in the Comanche claim which he asserts in this case, and as derived from the same source. It also appears from it and the other facts which are in evidence that the character of the Grand Prize deed was known at the time the suit was brought. In offering it the defendant sought to bring the case within the rule laid down by some courts, that, after an injunction has once been refused in an action between the same parties, a second application will not be entertained, either in the same action or in another subsequently brought, when it appears that the second application is based upon the same grounds upon which the first application was made, or upon grounds which might have availed in the first instance. The following authorities lend support to the views contended for by the defendant: 16 Am. & Eng. Enc. Law (2d Ed.), 365; 2 High on Injunctions, Sec. 1586; *Porter* v. *Morere,* 30 La. Ann. 230; Beach on Injunctions, Sec. 155; *Endicott* v. *Mathis,* 9 N. J. Eq. 110. While we would not be willing to go so far as to declare that this seemingly harsh rule should be rigorously applied to all cases where a second application is made for an injunction in the same or a second action, we are nevertheless of the opinion that it is a rule of wholesome application in cases involving serious doubt upon the merits, or where the circumstances leave the court in uncertainty as to the good faith of the application, or where it is doubtful whether the plaintiff is chargeable with laches. Upon this theory, the evidence should have been admitted and considered.

The affidavit of Evans is made upon knowledge. It served to render clear the identification of the parties in the various suits referred to, and also the subject-matter involved therein. On this theory, it should have been admitted and considered.

The order of the district court is reversed, and the cause is

remanded, with directions to proceed in accordance with the views expressed herein.

*Reversed and remanded.*

MR. JUSTICE MILBURN: I concur.

MR. JUSTICE PIGOTT: I concur in the foregoing opinion, except the paragraph with reference to the admissibility of the record in cause 8,304. As to the views therein stated, I express no opinion.