GANS & KLEIN INVESTMENT CO., APPELLANT, *v.* SANFORD ET AL., RESPONDENTS.

(No. 6,880.)

(Submitted January 4, 1932. Decided March 3, 1932.)

[2 Pac. (2d) 808.]

*Messrs. Stewart & Brown,* for Appellant P. H. Chevallier, submitted a brief; *Mr. John G. Brown* argued the cause orally.

*Mr. F. W. Mettler,* for Respondent Mary P. McDonald, submitted a brief and argued the cause orally.

*Mr. Henry C. Smith,* for Respondents Mark A. Heany, Della M. Heany and James A. Best, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from an order made after final judgment,—from an order giving directions to a water commissioner.

The situation is unusual, but one likely to arise in one aspect or another in periods of low water, especially when there have been two or more decrees affecting the waters of a stream. Whenever the rights of persons to use the waters of a stream have been determined by a decree or decrees of a court of competent jurisdiction, the judge of the court, upon proper application made, is empowered to appoint one or more water commissioners who shall have the authority to admeasure and distribute to the parties bound by the decree or decrees the waters to which they are entitled. (Sec. 7136, Rev. Codes 1921, as amended by sec. 1, Chap. 125, Sess. Laws 1925.)

Any person owning or using any of the waters of the stream, who is dissatisfied with the method of distribution employed by the water commissioner or commissioners, and who claims to be entitled to more water than he is receiving, or is entitled to a right prior to that allowed him by the commissioner or commissioners, may file with the judge his written complaint, duly verified, setting forth the facts of such claim. Thereupon the judge shall fix a time for the hearing of the petition and shall direct that such notice be given to the parties interested in the hearing as he may deem necessary. At the time fixed for the hearing, the judge must hear and examine the complainant and such other parties as may appear to support or resist the claim made, and also examine the water commissioner or commissioners and witnesses as to the charges contained in the complaint. Upon the determination

of the hearing, the judge shall make such findings and order as he may deem just and proper in the premises; if the water commissioner or commissioners have not properly distributed the water according to the provisions of the decree, then the judge shall give the proper instructions therefor. (Sec. 7150, Rev. Codes 1921 as amended by sec. 5, Chap. 125, Sess. Laws 1925.)

This proceeding affects the right to the use of the waters of Little Prickly Pear Creek. Three decrees are under consideration. The first, wherein William W. Martin, Henry Klein, Herman Gans and Louis Gans were plaintiffs, and Frank M. Proctor, George W. McCormick and others were defendants, was rendered in 1890, Honorable William H. Hunt, Judge presiding, and will be referred to as the Hunt decree. In this decree it was adjudged that the defendants Proctor and McCormick had two rights, one of 66 inches as of the spring of 1867, prior to that of plaintiffs, and a second right of 66 inches as of the spring of 1881. The second right the court held ''is subordinate to the right of the plaintiffs to the use of 500 inches of the waters of said Little Prickly Pear Creek, as appropriated through their Trinity Ditch, * * * '' which the court held subsequent to Proctor and McCormick's first right.

The second decree was the result of a suit brought by the Gans & Klein Investment Company, successor in interest of the plaintiffs in the Hunt decree, against William and Ann Sanford and many others, including Proctor, who was the successor in interest of McCormick's rights, with the evident purpose of determining the rights of all water users upon Little Prickly Pear Creek and its tributaries. After trial before Hon. Henry C. Smith, Judge presiding, a decree was entered August 2, 1905, which will be referred to as the Smith decree. Finding of fact No. 5 of this decree recites the entry of the Hunt decree wherein Proctor and McCormick were given the first right of 66 inches as an older and prior right to the claim of plaintiffs, Gans & Klein Investment Company, ''but that plaintiffs' right is prior to the balance of said

Proctor and McCormick right." Then follow findings establishing amounts and dates of rights to the use of the waters of Little Prickly Pear Creek and its tributaries prior to the rights of Proctor and the Gans & Klein Investment Company.

In separate findings the court without reservation found the Proctor right to be 222 inches as of date May 30, 1867; the Gans & Klein Investment Company's right to be 265 inches as of date September 15, 1867; the Ann Negus and Moses F. Root right to be 300 inches as of date March 1, 1872, and the James A. Best and Frank J. Wohlfrom right to be 145 inches as of date March 1, 1872. Other findings relate to many subsequent rights of various appropriators.

Appropriate conclusions of law followed, among them four severally confirming the rights of Proctor, the Gans & Klein Investment Company, Negus and Root, Best and Wohlfrom,. as above stated. Following many other conclusions came 34, reading as follows: "That as between Frank M. Proctor and the Gans & Klein Investment Company, Proctor is first entitled to the use of 66 inches of water and then the Gans & Klein Investment Company as against Proctor is entitled to the use of 500 inches of its water before the said Proctor is entitled to use the balance of his 222 inches heretofore mentioned." Others followed. Thereupon the court entered its decree.

Later, in an action entitled *Gans & Klein Investment Company* v. *Lidolph et al.*, Hon. J. M. Clements presiding, additions were made to the Smith decree. This last decree was rendered March 21, 1908, and is called the consolidated decree. Therein the court reiterated all findings and conclusions of law of the Smith decree which are pertinent here.

P. H. Chevallier is the successor in interest of the rights of Gans & Klein Investment Company; Mary P. McDonald is the successor in interest of the rights of Proctor; Mark A. Heany and Della A. Heany are the successors in interest of the rights of Root and Negus; and James A. Best is the successor in interest of the rights of Best and Wohlfrom.

This proceeding was begun by Chevallier who complained in writing, pursuant to the provisions of section 7136 as

amended, supra, annexing to his complaint as Exhibit A a copy of the Hunt decree, and as Exhibit B a copy of the Smith decree. There is annexed also a copy of the consolidated decree. He alleged that, "notwithstanding the fact that said decrees are in full force and virtue and have never been modified, set aside or changed as to these particular rights," the water commissioner persists and continues to interpret the decree and distribute the waters so as to give to the successors of Proctor and McCormick 66 inches of water, then to the complainant 265 inches of water, then to the successors of Proctor and McCormick the remainder of their 222 inches; he alleges that Mrs. McDonald should be given 66 inches of water as of the early part of 1867, but before she "shall have the balance of the 222 inches" Chevallier be given 500 inches of the waters of the stream; "that is to say, that when the waters of said stream are so low as to shut off rights prior to 1872, the successors in interest of Proctor and McCormick's rights shall have 66 inches but before they get any more the successors in interest of the Gans & Klein Investment Company's rights, to wit, this complainant, shall have 500 inches of said stream adjudicated."

The judge issued an order to show cause directed to the water users. Thereafter Mary P. McDonald filed her separate answer and cross-complaint, in which she contended that she should have a prior right to the use of 222 inches of the waters of the creek before Chevallier is given any. Chevallier replied. On the same day the reply was filed Chevallier filed a motion for judgment on the pleadings. Four days later McDonald filed a like motion.

In the meantime Della A. Heany, Mark A. Heany and James A. Best filed an answer to the complaint of Chevallier. On the 6th of November a hearing was had. The motions for judgment on the pleadings were submitted without argument, and the judge, upon a review of the pleadings, held that the references to the Hunt decree therein are not any part of the decision in the Smith (or the consolidated) decree, and that the waters of Little Prickly Pear Creek should be

distributed without regard to any references made in the judgment-roll to the Hunt decree. The judge overruled the motion of Chevallier and sustained that of McDonald, instructing the water commissioner that, as between Chevallier and McDonald, the water should be distributed as follows: First, 222 inches representing the Proctor interests as of date May 30, 1867, to McDonald; second, 265 inches representing the Gans & Klein interests as of date September 15, 1867, to Chevallier; the remainder of the waters, if any, to be distributed and apportioned to the subsequent users in accordance with the dates of their appropriations as fixed and determined in the Smith and consolidated decrees. To all intents and purposes the term "Judge" and the term "Court" will be deemed synonymous in this proceeding.

In the bill of exceptions there is included a stipulation entitled *"Gans & Klein Investment Co., Plaintiff,* vs. *Wm. and Ann Sanford et al., Defendants,* No. 5627," in which it is agreed that the water commissioner theretofore has distributed to "Mary P. McDonald 66 inches of water, then 225 inches to P. H. Chevallier, and then 156 inches to Mary P. McDonald as alleged in the respective pleadings of said parties, as in said bill of exceptions set forth."

It will be noted that none of the water rights prior to May 30, 1867, are affected by this proceeding.

The only pleading required by section 7150, as amended, supra, is the written complaint of a water user who is dissatisfied with the manner in which the commissioner is distributing the water. The method prescribed is a simple one: A person deeming himself injured by the actions of the commissioner lodges with the judge (or files with the clerk) a written complaint, upon which the judge fixes a time for hearing, directing that "such notice be given to the parties interested in such hearing as the judge may deem necessary." At the time fixed the judge hears and examines the complainant and such other parties as may appear to support or resist the claim, as well as the water commissioner and other witnesses as to the charges contained in the complaint. The sole

question for determination is whether the water commissioner has been distributing the water to the respective users in accordance with the decree. It is possible that in time of low water the judge may be obliged to hear a number of complaints under this section of the statute during an irrigation season. The statute does not contemplate that a formal trial, framed upon pleadings filed by the respective parties, shall result from the mere filing of a complaint. Supposedly when a water right suit ends in a final decree, all of the issues contemplated therein are adjudicated. The decree is not merely a basis for a new procession of water suits. In the administration of the decree it may happen for one reason or another that the water commissioner may need directions from the judge respecting the distribution of the water; and it is readily perceived that this is more likely where there have been successive, and sometimes overlapping, decrees relating to the water rights.

We do not commend the practice of permitting the filing of demurrers, motions and answers in proceedings of this character. Unless a water user other than the complainant has cause for complaint because of the manner in which the water is being distributed, no reason appears for his filing any pleading. All he has to do is to present himself at the hearing to resist the demands of the complainant, if he thinks the relief asked for should not be granted.

We think the learned district judge was in error in the ▮▮▮▮ order made. It is argued that he took the view that Hunt decree did not adjudicate the rights to the use of the waters of Little Prickly Pear Creek, as between the parties thereto, under the rule laid down in *Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401. The distinction between the decree in *McKinney* v. *McKay*, construed in *Galiger* v. *McNulty*, and the Hunt decree is very wide. While it is true that the Hunt decree is obscure in some particulars, there cannot be any doubt that it awarded to Proctor and McCormick the right to the use of 66 inches as of the spring of 1867, to the plaintiffs in that case, Martin and the Gans & Klein people, the use of 500

inches as of a later date in 1867, and to Proctor and Mc-Cormick 66 inches as of 1881.

It seems unnecessary to cite authorities to sustain the point that the Hunt decree was *res judicata* as to the parties to that action. (But see sections 10558, 10560, 10561 and 10567, Rev. Codes 1921; *Wetzstein* v. *Boston & Montana etc. Min. Co.,* 26 Mont. 193, 66 Pac. 943; *Lyon* v. *United States Fidelity & Guaranty Co.,* 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86; *Stockgrowers' Finance Corp.* v. *Nett,* ante, p. 334, 7 Pac. (2d) 540.) Moreover, it is so recognized by the Smith and consolidated decrees, despite contradictory findings and conclusions therein. We must take these three decrees as we find them, taking each at its face value and harmonizing their provisions, if we can, in the light of the conditions presented.

Notwithstanding the effect of *res judicata* to litigation in general, it is not like unto the laws of the Medes and Persians, for, as Mr. Freeman observed: "Rights acquired by virtue of a judgment or decree are liable to be terminated in the same manner. Consequently though a matter has once been litigated to a final judgment if it is subsequently relitigated and adjudicated, the last judgment controls and determines the rights of the parties. The second judgment cannot be collaterally impeached by showing the first. In another aspect this principle has been applied in connection with the rule that one who fails to plead or prove a former adjudication waives the benefit of it." (2 Freeman on Judgments, 5th ed., sec. 629.)

Remembering that Proctor, the successor in interest of Proctor and McCormick, and the Gans & Klein Investment Company, the successor in interest of the rights of Martin and Gans & Klein in the original action, were parties to the litigation which resulted in the Smith decree, it follows that their water rights necessarily were relitigated and re-adjudicated in the Smith decree. The effect of this we shall discuss hereafter. The present proceeding, however, is not an action in equity, wherein different decrees are before the court for correction or amendment. The only question here is whether the

judge correctly instructed the water commissioner. The Hunt decree has no binding force against anyone except McDonald and Chevallier. The Smith and consolidated decrees establish the rule of conduct as between all the parties thereto.

Presumably, upon competent and sufficient evidence, Judge Smith found the right of Proctor, based upon his beneficial use and needs, to be 222 inches as of date May 30, 1867. Upon like evidence he found that the beneficial use and needs of the Gans & Klein Investment Company to be, not 500 but 265 inches as to all except Proctor. All this the consolidated decree affirms. In the last two decrees the court, while recognizing its former, the Hunt, decree, has changed the amounts of water and in some respects the dates of the rights fixed in that decree, and thus the Hunt decree is in conflict with the Smith and consolidated decrees. The result is that Mrs. McDonald has a prior right to use 222 inches of water as against all persons having rights subsequent to 1867. Chevallier has a prior right to use 265 inches as of date September 15, 1867, as against all persons having rights subsequent to 1867, and no more. All those whose rights are recognized and fixed in the Smith and consolidated decrees, when in need of water, are entitled to confine Chevallier to the use of 265 inches as of date September 15, 1867. (Sec. 7097, Rev. Codes 1921; *Gassert* v. *Noyes,* 18 Mont. 216, 44 Pac. 959; *Featherman* v. *Hennessy,* 43 Mont. 310, 115 Pac. 983; *Custer* v. *Missoula Public Service Co.,* ante, p. 136, 6 Pac. (2d) 131). (Indeed, as in all such cases, they may compel Chevallier, a prior appropriator, to release for their use water which he does not need for a beneficial purpose.)

Manifestly, the conflict between the decrees must be reconciled, if it is reasonably possible to do so. As with other documents, the legal operation and effect of a judgment must be ascertained by construction and interpretation of it. The legal effect is that which governs. Judgments are to have a reasonable intendment; where a judgment is susceptible of two interpretations the one will be adopted which renders it the more reasonably effective and conclusive and which makes

the judgment harmonize with the facts and law of the case. (34 C. J. 501, 502; *Lamb* v. *Major & Loomis Co.*, 146 N. C. 531, 60 S. E. 425; *Watson* v. *Lawson*, 166 Cal. 236, 135 Pac. 961; *Sharp* v. *Zeller*, 114 La. 549, 38 South. 449; *Simons* v. *Munch*, 127 Minn. 266, 149 N. W. 304; 1 Black on Judgments, 2d ed., sec. 3.) It is imperative, in view of the contradictory findings and conclusions of the court in the Smith and consolidated decrees, to ascertain the intention of the court. A decree will not be construed so as to result in positive wrong where that result can possibly be avoided. (21 C. J. 689; *McCullough* v. *Connelly*, 137 Iowa, 682, 15 L. R. A. (n. s.), 823, 114 N. W. 301.)

Clearly, under the two last decrees, the waters of Little Prickly Pear Creek should be distributed in accordance with the respective priorities, except as to Chevallier and McDonald. Under ordinary conditions, as between themselves, McDonald has a prior right to use 66 inches of water, and must refrain from the use of the remainder of her right until Chevallier receives his 265 inches of water; but she is entitled to the remainder, 156 inches, prior to all others whose rights are subsequent to May 30, 1867. This is the practical effect of the Smith and consolidated decrees, for, as against all subsequent "decreed rights," Chevallier is confined to 265 inches as of date September 15, 1867. Under no circumstances can he take more when subsequent appropriators (except McDonald under exceptional conditions as hereinafter explained) require the water. The rights now owned by the Heanys and Negus, aggregating 445 inches of water, next intervene, being prior to Chevallier's second right, which is dated in 1875. All of McDonald's 222 inches are prior to the rights of the Heanys and Negus. If the rights of others upon the stream were not affected, Chevallier would be entitled to receive 235 inches in addition to his 265 inches in preference to the 156 inches, which makes up the full amount of the McDonald right, but when subsequent appropriators need these 235 inches Chevallier cannot withhold it. He cannot take the 156 inches from McDonald, add that to his 265 inches, and use the aggregate

amount, 421 inches, as against the subsequent appropriators, for, as we have said, as between him and them, they could compel him to release all in excess of 265 inches. He thus would take from her that which not enriches him but makes her poor indeed, to paraphrase Iago's celebrated saying. (Shak. Othello, act III, scene III.)

The decrees simply postpone the use of a portion of the McDonald right until after Chevallier has received that to which he is entitled. Not by any construction do they deprive Mrs. McDonald of the use of water decreed to her. If an exceptional condition were to arise so that the subsequent appropriators' rights could be supplied, and there should still be sufficient surplus water in the creek, then Chevallier could compel her to refrain from using her 156 inches until he had received his entire 500. The fact remains that as to each subsequent appropriator Chevallier is confined to the use of 265 inches of water as of date September 15, 1867, so long as that subsequent appropriator is in need of water. Chevallier's contention, therefore, cannot be sustained.

The instruction to the water commissioner under the conditions presented should have been that McDonald be given 66 inches, then Chevallier 265 inches, then McDonald 156 inches, the others receiving their water in accordance with the priorities fixed by the Smith and consolidated decrees.

The order appealed from is reversed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.