JERRY BECKER, APPELLANT, *v.* THE MARBLE CREEK IRRIGATION COMPANY ET AL., RESPONDENTS.

APPEAL — AMENDMENTS — IRRIGATING RIGHTS — APPROPRIATION — ABANDONMENT.

1. Where, from an examination of the record, it appears that plaintiff had a primary right to use sufficient water of a certain creek for irrigating certain lands, and no abandonment of such right, as contemplated by the statute, was shown by defendants, the supreme court may so modify the decree of the trial court as to make it comply with the showing made in the record of the cause, and award to plaintiff an equitable portion of the water in dispute.

2. A prior appropriator of water of a certain stream cannot so increase his demands and use of the water as to deprive a subsequent appropriator of his rights acquired before such increased demands and use.

3. An appropriator who permits a part of the water to run to waste or fails to use a certain portion of it for some beneficial purpose, is only entitled to that part of the water actually applied to a beneficial use.

( No. 779.   Decided July 16, 1897.)

Appeal from the First district court, Box Elder county. Hon. C. H. Hart, *Judge.*

15 UTAH—15

Action by Jerry Becker against the Marble Creek Irrigation Company and others. From a judgment for defendants plaintiff appeals. *Reversed.*

*L. R. Rhodes,* for appellant.

*Evans & Rogers* and *A. G. Horn,* for respondents.

CHERRY, D. J.:

This is a decree of the First judicial district court of Box Elder county, giving the defendants all the waters of Marble creek, in that county, for irrigation purposes. The defendant company was organized in 1893 for the purpose of controlling and distributing so much of the water of said creek as might be necessary for the irrigation of the defendant's lands. The record shows that Marble creek has its source in the mountains above Park valley, through which it flows about 10 miles; that the defendants own and occupy a number of small farms, aggregating about 900 acres, which they irrigate with its waters; that the plaintiff occupies 160 acres of meadow lands, situated from 4 to 5 miles below the lands of the defendants, about 100 acres of which he alleges have been irrigated by himself and through his predecessors in interest, from the waters of said creek, for about 30 years. The defendants deny the appropriation by the plaintiff and his grantors, and claim by way of cross complaint that they and their grantors have used all the waters of said creek for about 26 years except the overflow during high water. The case was tried by the court, and the decree entered on the 30th day of June, 1896. The testimony on some of the facts material to support the decree was contradictory and unsatisfactory, but there seems to be little or no dispute upon the vital issue of plaintiff's right to use a sufficient amount of said water for the pur-

poses for which he claimed it. The uncontradicted evidence showed that plaintiff's land produced wild and tame grasses when sufficiently watered; that the defendants, since their appropriation of the said waters have been gradually increasing the number of acres to be irrigated, thus requiring a corresponding increase in the quantity of water, all of which came from the waters of said Marble creek; that some of the defendants permitted large quantities of water to be wasted by suffering it to flood the roads, and flow into unused lands; that the plaintiff needed the water for irrigating in the early part of the season, viz., May, June and fore part of July. The evidence also shows, and it is virtually conceded in the ninth finding of fact by the court, that in those months there is a surplus of water in said creek; that sufficient water came down said creek in the natural channel on the months above mentioned to supply the plaintiff's wants until by the gradual increase of the defendants' acreage they used practically all of the water, and that thereafter plaintiff's farm decreased in the production of its usual crop. While there may be some difficulty from the conflicting evidence to determine which of these parties were the prior appropriators of water at regular periods, yet we think it is plain that, even conceding the defendants were, prior to the year 1883, and including that year, and since, the plaintiff became the next subsequent appropriator, using the water not appropriated by the defendants, and that his present lack of water is caused by the defendants increasing their demand until they use all the water in the stream, and thus totally deprive the plaintiff of whatever rights he had acquired in 1883, by his appropriation. In the arid region water is life, and it is too precious an article to be permitted to run to waste. The great weight of modern authority is to

the effect that when an appropriator permits part of the water appropriated to run to waste, or fails to use a certain portion of it for some beneficial use or purpose, he can only hold that part of the water which has been actually applied to a beneficial use, and his right is limited to the quantity so used. *Sieber* v. *Frink*, 7 Colo. 148; *Combs* v. *Ditch Co.*, 17 Colo. 146.

The mere fact that the defendants had secured control of all the water through a so-called "saving ditch" would not give them the absolute right to deprive a subsequent appropriator of such quantity as they did not put to a beneficial use. *Fort Morgan Land & C. Co.* v. *South Platte Ditch Co.*, 18 Colo. 1; *Reservoir Co.* v. *Southworth*, (Colo Sup.) 21 Pac. 1028.

The awarding of a priority in excess of the amount actually appropriated for a beneficial use at the time is error. The saving ditch was constructed at a time when the plaintiff, or his predecessors, was using part of the water. It diverted all the water from the natural channel for some distance and then discharged the overflow back into the channel. This could give to defendants only such increase or saving of the volume of the stream as was occasioned by the construction of the ditch; and whatever rights the plaintiff had acquired in the waters of Marble creek prior to the construction of the ditch would not be impaired, even if he made no objection, or did not aid in its construction. Their relation to each other would be that of tenants in common respecting the waters of the stream, and a court of equity has power to ascertain and determine their respective rights as to the waters therein flowing. *Irrigation Co.* v. *Moyle*, 4 Utah 327; *Frey* v. *Lowden*, 70 Cal. 550; *Combs* v. *Slayton*, 19 Or. 99.

The waters of a prior appropriator are fixed by the extent of his appropriation for a beneficial use, and others

may subsequently appropriate any water of a stream not so used by a prior appropriator; and such latter appropriation becomes a vested right, and entitled to as much protection as the former, and a right of which he cannot be deprived except by voluntary alienation, or forfeiture by abandonment. The rights of the former being thus fixed, he cannot enlarge his rights to the detriment of the latter by increasing his demands, or by extending his use to other lands, even if used for a beneficial purpose. *Lobdell* v. *Simpson*, 2 Nev. 274; *Water Co.* v. *Powell*, 34 Cal. 109; Gould, Waters § 231; Kin. Irr. §§ 175, 176; *Salina Creek Irrigation Co.* v. *Salina Stock Co.*, 7 Utah 456.

In the case at bar the findings of the lower court admit of a surplus of water during the early part of the season, ending in the month of June, and at a time when the plaintiff most needed the water; yet in the decree the court decides that the defendants have a prior right to use sufficient of the waters of Marble creek to irrigate 1,000 acres of land; thus by order of court permitting an enlargement of defendants' rights to the extent of 100 acres from the amount of acres now farmed by them, and that at a time of year when there is a surplus of water. We are led to the conclusion that the trial court erred in rendering the decree, and we are of the opinion that the same should be modified so as to give to plaintiff an equitable portion of the water in dispute, viz.: That the plaintiff be decreed to have the uninterrupted flow of said stream in its natural channel at stated periods of 48 hours each, commencing at 12 o'clock noon with the 10th day of May, the 25th day of May, the 10th day of June, the 20th day of June, the 1st day of July, and the 10th day of July in each year; and that the plaintiff be decreed the right to use for irrigation purposes all surplus or overflow waters of said Marble creek during the months of April, May, June, and July of each year.

From an examination of the record, it appears that the preponderance of the evidence establishes the fact that the plaintiff had a primary right to use sufficient of said waters for the purposes of irrigating his meadow land, and no abandonment of such right, as contemplated by our statutes, was shown by the defendants. The case is remanded, with instructions to the trial court to enter up a decree in accordance with the views herein expressed, and that each of the parties be enjoined from interfering with the rights of the others as stated in this opinion, and that the plaintiff recover his costs.

MINER, J., concurs.

ZANE, C. J. (dissenting):

The plaintiff alleged in his complaint that about 30 years ago he appropriated enough of the waters of Marble creek to irrigate 100 acres of land, and that he had never abandoned his appropriation. This allegation the defendants denied, and filed a cross complaint against the plaintiff, in which they alleged that they and their grantors had used all the waters of the creek for about 26 years, except the overflow during high water caused by melting snow or heavy rains for short periods. A large number of witnesses testified on both sides of these issues. The trial court, after hearing all the evidence, found for the defendants to the original complaint and for the plaintiff to the cross complaint. It must be conceded that the evidence was very conflicting and unsatisfactory, and reasonable men, after considering it, might differ as to the side on which it preponderated. When the proof of any fact is so unsatisfactory and uncertain, this court has refused to reverse. The trial court hears the witnesses in a case like this, and observes their appearance and demeanor on the stand, and has better op-

portunity to judge of their credibility. I dissent from the judgment of the court reversing the judgment of the court below.

---

Motion for rehearing:

On motion for rehearing the above opinion was modified by striking out therefrom the words, "And the 10th day of July in each year," in line 31 on page 229 of the opinion. With this modification, the motion for rehearing is overruled.