WALLACE ET AL., RESPONDENTS, *v.* GOLDBERG ET AL., APPELLANTS.

(No. 5,587.)

(Submitted January 7, 1925. Decided January 20, 1925.)

[231 Pac. 56.]

*Water Rights—Judgment by Consent—Estoppel—Evidence— Admissibility—Appropriation of Water—Extent of Right.*

Judgment by Agreement—Estoppel.
    1.   Where parties to an action elect to depart from the issues made by the pleadings and try other questions relating to the merits of the case, the resulting judgment becomes one by consent or agreement and is conclusive upon them as an estoppel although the pleadings do not support it.

Judgment—Effect—Judgment-roll may be Considered.
    2.   For the purpose of determining the effect of a judgment the entire judgment-roll may be examined, and if the judgment has been accepted or acquiesced in by the parties it will not be departed from except for the most cogent reasons.

Water Rights—Judgment by Consent—Construction by Parties— Estoppel.
    3.   Where defendants in a water right suit consented to a decree perpetually enjoining them from diverting any of the natural flow of a creek, they in effect agreed that they had no right to use any of such water, and they as well as their successors in interest, who for a number of years thereafter by their conduct conforming to the decree placed a practical construction upon it, were estopped in a subsequent action by the heirs of plaintiff to assert any right to the water as against them.

Same—Estoppel by Judgment—Judgment-roll in Prior Action Admissible in Evidence.

4.   The judgment-roll in a water right suit in which defendants had not claimed any right to the use of water in a creek, denied having used any of it and acquiesced in the giving of an instruction that if they had diverted any of it their acts were wrongful and that plaintiff was entitled to damages, was admissible in a subsequent action against their successors in interest in support of plaintiff's plea of estoppel by judgment.

Judgment—Estoppel must be Mutual.

5.   An estoppel by judgment must be mutual, so that the parties or their privies may both be bound or take advantage of it, but to be mutual it is not necessary that it shall operate upon the parties in the same manner.

Water Rights—Prior Appropriator may Use All Water in Stream to Exclusion of Riparian Proprietors.

6.   Under the doctrine of appropriation of water, one who has appropriated the entire flow of a stream may use it all to the exclusion of riparian proprietors for any purpose, provided his needs require it all and his facilities for diversion are such as to carry it all.

*Appeal from District Court, Powell County, in the Second Judicial District; C. W. Pomeroy, Judge of the Eleventh District, presiding.*

ACTION by Martha J. Wallace and another against C. E. Goldberg and wife. Judgment for plaintiffs and defendants appeal. Affirmed.

*Mr. S. P. Wilson,* for Appellants, submitted an original and a supplemental brief and argued the cause orally.

*Mr. Edward Scharnikow* and *Mr. H. W. Rogers,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1865 William Wallace and David M. Dunkelberg each located a homestead near the mouth of Dunkelberg Creek in what was then Deer Lodge County, and about the same time each made an appropriation of the waters of Dunkelberg Creek for the irrigation of his lands. In 1885, Dunkelberg acquired the Hanley homestead which is located three or four miles above the mouth of Dunkelberg Creek. Later other persons

located upon the same stream, and an action was instituted by Wallace against Dunkelberg, Weaver and Perryman to have determined the relative rights of the parties to the use of the waters of Dunkelberg Creek. Such proceedings were had in the action that in 1893 a decree was entered which adjudged that neither Weaver nor Perryman had any right to use the waters as against Wallace or Dunkelberg, and that Wallace and Dunkelberg had the right to use all of the waters of Dunkelberg Creek in equal portions and as of even date. Dunkelberg died, and in 1899 the administratrix of his estate, acting under an order of court, conveyed the Hanley homestead with its appurtenances to Weaver. In 1902 the Dunkelberg homestead was conveyed to Wallace by a deed which purported to convey also the right to the use of one-half of all the waters of Dunkelberg Creek. In 1906 Wallace commenced an action against Weaver and one Peter Noid, and such proceedings were had therein that a decree by consent was entered in 1907. For convenience, that decree will be referred to as the decree in cause No. 734. In 1908, Weaver contracted to sell and thereafter sold the Hanley homestead to C. E. Goldberg. In 1910, Wallace commenced an action (cause No. 849) against Weaver, Noid, and C. E. Goldberg, the first trial of which occurred in 1911 and resulted in a judgment in favor of the defendants. Wallace appealed and secured a reversal (47 Mont. 437, 133 Pac. 1099), and a retrial in 1915 resulted favorably to him. Wallace died, and his interests passed to his two children. In 1915, C. E. Goldberg transferred the Hanley homestead and its appurtenances to his wife, Mary B. Goldberg. In 1921 this present action was instituted by the Wallace heirs against C. E. and Mary B. Goldberg. The Butte & Western Mining Company was made a party defendant, but before trial it was dismissed by stipulation, and hereafter the Goldbergs alone will be referred to as defendants. In their answer these defendants assert claims to the use of the waters of Dunkelberg Creek as of date 1865, and particularly assert their right to use one-half of the waters as the successors

in interest of Dunkelberg in the Hanley homestead and its appurtenances. In reply the plaintiffs pleaded the decree in cause 734 as an estoppel.

The trial court found that in 1885, when Dunkelberg acquired the Hanley homestead, he transferred the use of one-half of his water right from the Dunkelberg homestead to the Hanley homestead, and that that interest—the right to use one-fourth of the water of Dunkelberg Creek—became appurtenant to the Hanley homestead. The court held, however, that these defendants are estopped by the decree in cause 734 from asserting any right to use the waters of Dunkelberg Creek as against these plaintiffs, and rendered and had entered a judgment to that effect, from which the defendants appealed.

It is conceded that the plaintiffs, as the successors in interest of William Wallace and David M. Dunkelberg in the Wallace and Dunkelberg homesteads and appurtenant water rights, are entitled to use three-fourths of the waters of Dunkelberg Creek; but defendants claim a right of even date to use one-fourth of the waters of that stream as the successors in interest of David M. Dunkelberg in the Hanley homestead. They insist that the trial court erred in holding that they are estopped to assert this right, even though they are the immediate successors in interest of Weaver, who was a party defendant to the action in which the decree was entered. It is argued that the relative rights of the parties plaintiff and defendants (in cause 734) to the use of the waters of Dunkelberg Creek were not raised by the pleadings in that case, and therefore the decree should be construed as not having adjudicated those rights.

It is the general rule that, if upon the trial of a cause the [1] court departs from the issues and undertakes to adjudicate a matter not submitted for its decision, the judgment, to that extent at least, is without force and effect. (*Gille* v. *Emmons,* 58 Kan. 118, 62 Am. St. Rep. 609, 48 Pac. 569.) But counsel for defendants errs in assuming that an issue may not be adjudicated unless it is made by the pleadings. It is the

purpose of pleadings to present issues for determination; but it occurs not infrequently that without objection evidence is received, and thereon matters are determined which in point of fact are not within the issues made by the pleadings, nevertheless the parties are bound by the judgment; and, likewise, it occurs not infrequently that, after the issues are made by the pleadings, a cause is submitted upon an agreed statement of facts, and in such case the agreement rather than the pleadings is the basis for the judgment. (*Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596.)

In 33 C. J. 1154, it is stated to be the general rule that the parties to an action may elect to depart from the issues made by the pleadings and to try other questions relating to the merits of the controversy, by consent or acquiescence, and in such case the judgment is regular and binding upon them.

Every reason supports the rule that a judgment by consent or agreement binds those by whose consent or agreement it is entered, even though the pleadings would not support the judgment. (*Hutts* v. *Martin,* 134 Ind. 587, 33 N. E. 676; *Schmidt* v. *Oregon Gold Mining Co.,* 28 Or. 9, 52 Am. St. Rep. 759, 40 Pac. 406, 1014; *Lodge* v. *Williams,* 195 Ky. 773, 243 S. W. 1011; *Pacific Railroad* v. *Ketchum,* 101 U. S. 289, 25 L. Ed. 932 [see, also, Rose's U. S. Notes].)

In *Telluride Power Co.* v. *City of Teague* (Tex. Civ. App.), 240 S. W. 950, the Texas court said: "Whatever the pleadings in the former suit may have been, the judgment entered by consent was a waiver of every character of error, except fundamental error, going to the jurisdiction of the court. Any judgment which the parties to a suit cause to be entered by a *bona fide* agreement, no fraud being practiced in it, is binding upon them, regardless of what the pleadings and evidence may be, and such judgment is conclusive as an estoppel."

In principle, this court applied the same rule in *Corby* v. *Abbott,* 28 Mont. 523, 73 Pac. 120, and *Interior Securities Co.* v. *Campbell,* 55 Mont. 459, 178 Pac. 582.

It is elementary that, for the purpose of determining the
[2] operation and effect of a judgment, the entire judgment-
roll may be examined (*Freeman* v. *Donohoe,* 188 Cal. 170, 204
Pac. 593; *Clay* v. *Hildebrand,* 34 Kan. 694, 9 Pac. 466), and
when a construction of a judgment has been accepted or ac-
quiesced in by the parties to it, it will not be departed from
except for the most cogent reasons (*Rodee* v. *City of Ogdens-
burg,* 86 Misc. Rep. 229, 148 N. Y. Supp. 826; *Mooney* v.
*Mooney,* 10 Misc. Rep. 386, 31 N. Y. Supp. 118; 34 C. J. 503).

In his complaint in cause No. 734, Wallace alleged that he
[3] was entitled to use all of the waters of Dunkelberg Creek,
and that Weaver and Noid had conveyed water from Gold
Creek into Dunkelberg Creek in such manner as to pollute the
waters and interfere with the exercise of his right. In their
answer neither Weaver nor Noid asserted any claim to the
use of the waters of Dunkelberg Creek, but relied solely upon
their right to convey the waters of Gold Creek into Dunkel-
berg Creek, and to employ the channel of the latter stream as a
means of conducting the Gold Creek water to their ditches.
They alleged affirmatively that they had not interfered with
the rights of Wallace, and that, by conveying water from
Gold Creek into Dunkelberg Creek, the natural flow of the
latter stream had been augmented, and thereby more water was
made available for Wallace's use. In reply Wallace alleged
that Weaver and Noid had been diverting from Dunkelberg
Creek a greater quantity of water than they were conveying
into that creek from Gold Creek.

With the pleadings presenting the issues as thus outlined,
the parties then stipulated that a judgment should be entered
according to the terms agreed upon, which were that Wallace
should waive all claims for damages; that Weaver and Noid
should provide artificial means for conducting the waters of
Gold Creek into Dunkelberg Creek so as to prevent sediment,
debris or other foreign matters being deposited in Dunkelberg
Creek, and so as to prevent "injury or damage to the lands
or water rights of the plaintiff set out and described in his

complaint.'' It was stipulated further that the judgment should provide that Weaver and Noid should not ''divert into their said ditches or use upon their lands, or for any purpose whatever, more waters from said Dunkelberg Creek than they have conducted and are at the time they so divert said waters conducting into said Dunkelberg Creek, by the artificial means to be provided by them, less the amount of such water which shall be lost ·by evaporation, flowage, and seepage and other means.'' It was stipulated further that the decree should contain a provision that ''said defendants, and each of them, are perpetually enjoined and restrained from diverting more water from the said Dunkelberg Creek for irrigation, or any other purpose whatever, than the amount turned into the said Dunkelberg Creek by them by the artificial means to be provided by them, less the amount of such loss as is hereinbefore stated.''

The decree itself follows closely the language of the stipulation. Indeed, in all essential particulars the terms of the two instruments are the same. To illustrate: Paragraph 3 of the decree reads as follows: '' (3) It is further ordered, adjudged, and decreed that the said defendants, when they have ·so conducted the said waters into the said Dunkelberg Creek, as herein decreed and set out, shall not divert into their said ditches, or use upon their lands, or for any purpose whatever, more waters from said Dunkelberg Creek than they have conducted and are at the time they so divert said waters, conducting into Dunkelberg Creek, by the artificial means to be provided by them, less the amount of such water which shall be lost by evaporation, flowage, and seepage, and other means, from the point where the same is turned into the said Dunkelberg Creek to the point where the same shall be diverted from the said Dunkelberg Creek into the ditches of the said defendants for use upon their lands, and the said defendants and each of them are perpetually enjoined from diverting more water from the said Dunkelberg Creek for irrigation, or any other purpose whatever, than the amount turned into the said

Dunkelberg Creek by them by the artificial means to be provided by them, less the amount of such loss as is hereinbefore stated.''

In *Lyon* v. *United States Fidelity & Guaranty Co.*, 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86, this court considered the effect of the judgment entered in *Perrine* v. *Lyon,* and concerning it said: ''When the court by its judgment determined that Lyon was the owner, it necessarily found that Perrine had no interest, and therefore no sufficient cause for the appointment of a receiver. As between the parties to this action, that judgment was an adjudication, not merely of the conclusions expressed, but of everything necessarily included in them,'' citing section 7917, Revised Codes of 1907, now section 10561, Revised Codes of 1921.

Upon the same theory we say that, when Weaver and Noid agreed that a decree might be entered in cause No. 734, perpetually enjoining them from diverting any of the natural flow of the waters in Dunkelberg Creek for any purpose whatever, and, when in conformity with their stipulation the decree was entered, it must be held that the defendants necessarily agreed, and the court necessarily determined, that they had no right to use any of the waters of Dunkelberg Creek as against the right claimed by Wallace.

That this interpretation of the decree expresses the intention of the parties to the stipulation is evidenced, further, by the practical construction placed upon it by the parties themselves. When Weaver and C. E. Goldberg were called to account in 1909 for an alleged violation of the decree, Weaver testified that, prior to the time he sold the Hanley homestead to C. E. Goldberg, he placed a measuring box in Dunkelberg Creek so that he could determine that he was not diverting more water than he was conducting into that creek from Gold Creek. In the same proceeding, C. E. Goldberg testified:

''Q. And who is the owner of the water in Dunkelberg Creek? A. Mr. Wallace is the owner of the natural flow.   *   *   *

72 Mont.—16

"Q. Now, do you ever take out any more water other than leaving Mr. Wallace enough to get the natural flow of the water of Dunkelberg Creek? A. No, sir."

Upon the trial of this cause plaintiffs offered in evidence the [4] judgment-roll in cause No. 849, but upon objection by defendants the offered evidence was excluded, and cross-error is assigned by plaintiffs. The offered evidence, with the plaintiffs' exceptions, is presented in the bill of exceptions in conformity with the provisions of section 9751, Revised Codes of 1921. It is manifest that the trial court erred in excluding the evidence. It was admissible in support of the estoppel pleaded, and, bearing in mind that cause 849 was commenced in 1910, tried first in 1911 and retried in 1915, the materiality of the evidence becomes apparent. In case 849, Wallace alleged in his complaint that he was the owner of the right to use all of the waters of Dunkelberg Creek, and that Weaver, Noid and C. E. Goldberg were violating the decree in cause 734 by diverting more water than they were conducting into Dunkelberg Creek from Gold Creek. In their answer not one of the defendants laid claim to any right to the use of the waters in Dunkelberg Creek, and each one denied specifically that he had diverted or used any of the waters of that creek, or had diverted from its channel any water in excess of the amount conducted into it from Gold Creek. Upon the first trial of that cause, defendant Goldberg testified: "Q. Tell the jury whether or not you took out more water from Dunkelberg Creek during the season of 1909 than you put in. A. No; I never did. Q. At any time, did you? A. No; I never took any more than I put in." The witness explained further in detail the means employed by him to determine that Wallace was getting the use of the natural flow of the water of Dunkelberg Creek. When that cause was retried in 1915, apparently upon the pleadings referred to above, the court instructed the jury that, if they found that: "The defendants diverted from Dunkelberg Creek more water than they were turning into Dunkelberg Creek from Gold Creek, less the amount of such water which would

be lost by evaporation, flowage, and seepage, and other means, from the point where the same was turned into Dunkelberg Creek, to the point or points where the same was diverted from said Dunkelberg Creek and into the defendants' ditches, or either of their ditches, and used the same upon their or either of their lands, you should assess in favor of the plaintiff and against the defendants, such damages as you believe from the testimony will reasonably compensate the plaintiff for the loss of such water so used by the defendants, and diverted from said Dunkelberg Creek." The defendants acquiesced in the giving of that instruction, and thereby conceded that, if they had diverted any of the natural flow of the waters in Dunkelberg Creek, their acts in that respect were wrongful, and that Wallace was entitled to damages for the injury resulting from such acts. In other words, they conceded that, as against Wallace, they had no right to the use of any of the waters in Dunkelberg Creek.

If it can be said that the meaning of the decree in cause 734 is uncertain, this course of conduct on the part of Weaver, Noid and C. E. Goldberg, covering a period of eight years immediately after the decree was entered, constituted such a construction of the decree as to remove the uncertainty, and justified the conclusion of the trial court that these defendants are estopped to assert any right as against the plaintiffs to divert the waters of Dunkelberg Creek for any purpose whatever.

Counsel for defendants urges that the decree in cause 734 [5] lacks the element of mutuality, and for that reason may not be relied upon as an estoppel. In 1 Freeman on Judgments, fourth edition, section 159, it is said: "It is essential to an estoppel that it be mutual, so that the same parties or privies may both be bound and take advantage of it."

In explanation of the rule the same author says: "No man shall bind another by an adjudication which he is himself at liberty to disregard." In the decree in cause 734 it was adjudged that Wallace was not entitled to recover damages for

the trespasses to his property, and that the defendants should be perpetually enjoined from diverting any of the natural flow of the waters in Dunkelberg Creek. The decree is not wanting in mutuality. Wallace was bound by it to the same extent that it bound the defendants. It is not essential to mutuality that the estoppel shall operate upon the different parties in the same manner. To illustrate: If, after the decree in cause 734 was entered, Wallace had instituted another action to recover damages for the same trespasses, he would have been estopped by the decree as effectively as the defendants are estopped to claim a right to divert the waters which they were perpetually enjoined from diverting.

Finally, it is contended that, even though these defendants [6] are estopped to claim a right to the use of the waters of Dunkelberg Creek for irrigation purposes, they may nevertheless use the waters of that creek for the so-called natural purposes: domestic use and watering livestock, and in support of that contention reliance is placed upon the decision in *Mettler* v. *Ames Realty Co.,* 61 Mont. 162, 201 Pac. 702. But counsel completely misapprehends the force and effect of that decision. It was there held that the doctrine of riparian rights has never prevailed in Montana since 1865; that the doctrine of appropriation has prevailed and does prevail now; that the doctrine of appropriation sanctions the right of an appropriator to use all of the waters of a stream to the exclusion of riparian proprietors, if the entire flow has been appropriated by him, subject only to his needs and facilities as therein explained.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STARK concur.

MR. JUSTICE GALEN, being absent on account of illness, takes no part in the foregoing decision.