MANNIX & WILSON ET AL., APPELLANTS, *v.* THRASHER
ET AL., RESPONDENTS.

(No. 7,107.)

(Submitted October 3, 1933. Decided October 31, 1933.)

[26 Pac. (2d) 373.]

*Mr. Walter L. Pope* and *Mr. S. P. Wilson* for Appellants, submitted a brief; *Mr. Pope* argued the cause orally.

*Mr. W. E. Keeley,* for Respondents, submitted a brief and argued the cause orally; *Mr. W. T. Boone,* of Counsel.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action arose out of the manner employed by the water commissioner in distributing the waters of Gold, Pioneer and

Pikes Peak Creeks in Powell county under a decree, the appli-cable portions of which will be considered presently.

The three streams rise along the slope of the Flint range of mountains and run in the same general direction; Gold Creek, the main stream, flows into the Deer Lodge or Hell Gate River; Pioneer Creek, which rises between Gold and Pikes Peak Creeks, flows into Pikes Peak, which in turn flows into Gold. On Pioneer Creek about the town of Pioneer some of the first mining in Montana was carried on. Commencing with 1864 the miners conveyed by ditches the waters of Gold Creek across the intervening mountain to Pioneer, where the same were employed in placer mining, and these waters, after being thus used, ran down the channel of Pioneer Creek to its confluence with Pikes Peak, eventually again reaching the channel of Gold Creek where Pikes Peak joins that stream. Ever since 1864, to a greater or less extent, the waters of Gold Creek have been run into Pioneer Creek for mining purposes, but the quantities used through the years are not ascertainable from the record; however, it is admitted that at the time of the commencement of this action over two-thirds of the water flowing in Pikes Peak Creek was brought from Gold Creek by the Pioneer Placer Mining Company.

In 1915 the district court of Powell county rendered a decree in a cause, numbered 517 in that court, wherein the Pioneer Placer Mining Company was plaintiff, and others, including the parties to this action, were defendants. In that cause the main controversy was between those using water for mining purposes, the plaintiff Pioneer Placer Mining Company, the defendant Gold Creek Placer Mines, Limited, and some others on the one hand, and those using it for agricultural purposes on the other. The agricultural claimants did not contest the prior right of the miners to use the waters in the vicinity of the town of Pioneer, but they averred by amendments to their various answers that the mining companies had in mind the exploitation of placer mining ground lower on the streams and below the heads of the ditches of the defendants, and they asked the court to enjoin the miners from doing any such thing.

.Below the confluence of Pikes Peak and Gold Creeks the defendants Thrasher and Hogan and others had ditches tapping Gold Creek; these came into the present controversy only incidentally. The ditches with which we are principally concerned in this lawsuit are three, called the Toner, McGuerin, and Steiner, by means of which Hogan and Thrasher, respondents here, divert water from Gold Creek, and the Cannon & Brand ditch of the appellants Mannix & Wilson and Brand which crosses Gold Creek below the heads of these three ditches.

The Cannon & Brand ditch taps Pikes Peak Creek between the point where Pioneer Creek enters Pikes Peak and the junction of Pikes Peak and Gold Creeks, and carries the water of Pikes Peak and also the water of Gold Creek where it crosses that stream, to the lands of appellants; by means of this ditch the predecessors in interest of Mannix & Wilson appropriated 350 inches, and the predecessors in interest of Brand 300 inches, of the waters of Pikes Peak and Gold Creeks, as of date April 30, 1888.

On June 1, 1888, Thrasher, Hogan and Hollenbeck constructed a ditch called the Company ditch, which taps Pioneer Creek far below the placer workings and leads to Gold Creek; by means of the Company ditch, and as of its date, Thrasher appropriated 60 inches, Hogan 120 inches, and Hollenbeck 60 inches of the water of Pioneer Creek; the Company ditch deposits its water in Gold Creek above the heads of the Toner, McGuerin and Steiner ditches. Prior to the construction of the Company ditch, none of the water flowing in Pioneer Creek was or could be conveyed from Pioneer Creek to Gold Creek; before that this water flowed into Pikes Peak Creek, and the first ditch to intercept it in its course was the Cannon & Brand ditch.

It may as well be noted here that respondents concede appellants' prior right to take the "normal and natural" flow of the water of Pioneer and Pikes Peak Creeks through the Cannon & Brand ditch, but they claim a superior right to what they term the Gold Creek water flowing in Pioneer Creek. Hogan owns two appropriations of the water of Gold Creek, one of

date June 1, 1883, in amount 100 inches, and the other of date June 1, 1886, in amount 60 inches, and Thrasher owns one of date June 1, 1885, in amount 60 inches, diverted by means of the Toner, McGuerin and Steiner ditches, or some of them.

In 1930 the water flowing in Gold Creek being low and insufficient to supply these rights, Thrasher and Hogan caused Rogers, the water commissioner, to supply the Toner, McGuerin and Steiner ditches with water from Pioneer Creek through the Company ditch. Because of this procedure appellants commenced this action against Rogers as water commissioner, and Thrasher and Hogan, seeking an injunction to prevent a continuance of such acts. The court found for respondents; hence this appeal.

The judgment-roll in cause 517 was introduced in evidence. Undoubtedly the judgment in this case is the result of the interpretation which the trial court gave to certain of the findings of fact and conclusions of law which are the basis of the decree in that cause. Therein the court found the mining rights hereinafter mentioned to be superior to the agricultural rights; it awarded the Pioneer Placer Mining Company, among other rights, 300 inches of the water of Gold Creek, appropriated and diverted August 15, 1865, through the Keystone ditch, and 200 inches appropriated and diverted on October 1, 1867, through the Enterprise ditch; it said these appropriations "were made for the purpose of placer mining upon the placer mining bars above and in the vicinity of the town of Pioneer, and the said Pioneer Placer Mining Company and its grantors and predecessors in interest have always returned said waters from each and all of said appropriations into said Gold Creek and its tributaries above the heads of all the ditches of the following-named defendants, to-wit, Alois C. Brand, Frank Cannon, David Hogan, Antoine Thrasher, James Keenan and Thomas J. Hollenbeck," and provided that the company "must always return said waters, as they have heretofore done, to said Gold Creek and its tributaries above the heads of the ditches of each and all of said last-named defendants * * * and said plaintiff, Pioneer Placer Mining Company, and its succes-

sors in interest, or either of them, must not hereafter change the place or manner of use of said waters so as to prevent the same from returning to the natural bed or channel of Gold Creek, or its tributaries, at the point where the same will flow down in said Gold Creek and its tributaries, as it has heretofore done, to the heads of the several ditches of said defendants above named in this finding * * * ." Similar provisions were made respecting the defendant Gold Creek Placer Mines, Limited, which owned 1866 and 1867 rights from Gold Creek.

The intention is clear as is the letter of the decree when its entire conception is held in view: Pursuant to familiar law the miners were restrained from changing the place or manner of use of the water to the detriment of subsequent appropriators. (See *Alder Gulch Con. Min. Co.* v. *Hayes,* 6 Mont. 31, 9 Pac. 581; *Gassert* v. *Noyes,* 18 Mont. 216, 44 Pac. 959; *Maclay* v. *Missoula Irr. Dist.,* 90 Mont. 344, 3 Pac. (2d) 286.) If the matter were in doubt, the use of the words "as they have always done" and "as they have heretofore done" would be highly significant.

When the appropriations were first put to use, it was the practice of the miners, never changed, to release the water after use to the channel of Pioneer Creek. The obligation put upon the mining companies by the decree was that after using the water for the purpose and at the place for which it was appropriated to return it immediately to the channel of Pioneer Creek, which would carry it to Pikes Peak and eventually to Gold Creek (unless intercepted by others). The idea was to confine the water to the object of and to the place for which the water was appropriated, nothing more; under the issues as framed in cause 517 the court was without power, without jurisdiction, to require the miners to do more. This is so plain that resort to the rules of interpretation governing judgments is unnecessary, but reference may be made to Freeman on Judgments, fifth edition, section 76, and *Gans & Klein Investment Co.* v. *Sanford,* 91 Mont. 512, 8 Pac. (2d) 808.

Counsel for respondents argue that, as the water of Gold Creek, although diverted and used in Pioneer Creek, did

not leave "the Gold Creek watershed," it was subject to re-capture as Gold Creek water by those having appropriations from Gold Creek in the order of their priority. There is not any merit in this contention. When this water was deposited in Pioneer Creek, it was as much beyond the reach of the owners of the Toner, McGuerin and Steiner ditches until the construction of the Company ditch, as if Pioneer Creek were entirely without the Gold Creek watershed. When appellants made their appropriations from Pikes Peak through the Cannon & Brand ditch, the water thereby appropriated was that in which respondents, in so far as the requirements of the Toner, McGuerin and Steiner ditches were concerned, had no interest whatsoever. Respondents' rights to the water used in placer mining at Pioneer and thereafter flowing in Pioneer Creek did not come into being until the date of their appropriation of the same through the Company ditch; then it was to them Pioneer water, and so they appropriated it, notwithstanding the gratuitous assertion of the court that they appropriated the natural flow of Pioneer and the water of Gold Creek therein flowing after use. On this phase of the case respondents are foreclosed by *Galiger* v. *McNulty,* 80 Mont. 339, 260 Pac. 401. In accord is *Sieber* v. *Frink,* 7 Colo. 148, 2 Pac. 901. (Compare *Popham* v. *Holloron,* 84 Mont. 442, 275 Pac. 1099; *Rock Creek Ditch & Flume Co.* v. *Miller,* 93 Mont. 248, 17 Pac. (2d) 1074.)

It is an odd conceit that a court by procedural directions to one litigant may fix the characteristic of the unrelated property rights of another; how could the court, even if it had the power to compel the Pioneer Placer Mining Company to run the waters of Pioneer Creek, after use, to the head of the Company ditch, thus affect the priorities to the use of those waters as between appellants and respondents?

That portion of finding of fact 9, relating to 50 inches of water appropriated June 16, 1873, through the McGuerin ditch as the property of respondent Thrasher, admittedly is not sustained by the evidence and must be eliminated.

A portion of finding of fact 12 is erroneous. The head of the Cannon & Brand ditch is not below the heads of all the

ditches of the respondents; and the following language therein, "that all of the appropriations and adjudicated rights of defendants out of Gold Creek are prior in point of time and superior to any of the rights of plaintiffs to divert water from Gold Creek through said Cannon & Brand ditch," is unnecessary, was not properly within the inquiry, and must be disregarded.

The cause is remanded to the district court of Powell county, with directions to modify the findings of fact, conclusions of law and decretal provisions in conformity with this opinion. Appellants are entitled to their costs on this appeal.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.

Rehearing denied November 18, 1933.

