QUIGLEY ET AL., APPELLANTS, *v.* McINTOSH ET AL., RESPONDENTS.

(No. 7,839.)

(Submitted March 17, 1939.  Decided May 5, 1939.  Resubmitted March 1, 1940.  Decided June 21, 1940.)

[103 Pac. (2d) 1067.]

*Mr. S. P. Wilson*, for Appellants, submitted an original and a reply brief, and argued the cause orally.

*Mr. Lew L. Callaway, Mr. Lester H. Loble* and *Mr. Hugh R. Adair*, for Respondents, submitted a brief, and a supplemental brief on reargument; *Mr. Callaway* and *Mr. Adair* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

In 1913 a final decree was entered adjudicating the water rights of Three Mile Creek in Powell county. This appeal is

from an order made after final judgment;—an order giving instructions to a water commissioner appointed by the court.

The parties now involved, or their predecessors, were all parties to the 1913 adjudication, with the exception of the water commissioner, who, as will appear obvious, is a necessary party. While there are several appellants, we shall refer to them as appellants "Quigley" or "Kimmerly," as the case may be, since they are the principal ones involved. McIntosh and Gravely are the respondents. They hold water rights which are nearly all junior to those of appellants. The Quigleys are located at the head of the creek, and the Kimmerlys at the foot thereof. The lands of the respondents and all of the other users lie between those two.

This proceeding was instituted in 1937 under the provisions of Chapter 82, Revised Codes (secs. 7136–7159). Section 7150 provides, in substance, that any person entitled to use and using water rights from an adjudicated stream under a "decree or decrees," who is dissatisfied with the method of distribution of the water thereof by a water commissioner, and who claims to be entitled to more water than he is receiving, or is entitled to a right prior to that allowed by him by the water commissioner, may file a written complaint setting forth the facts of such claim.

Procedure for the trial of such complaints is outlined and provision is made for examination of parties and witnesses in support of or against the complaint. "Upon the determination of the hearing, the judge shall make such findings and order as he may deem just and proper in the premises. If it shall appear to the judge that the water commissioner or water commissioners have not properly distributed the water according to the provisions of the decree, then the judge shall give the proper instructions for such distribution."

The record of the hearing is quite voluminous and approximately 650 pages of testimony were taken. After an extended study the trial judge made extensive findings of fact and conclusions of law, rendered thirteen orders with respect to the distribution and use of the waters and ditches, and in con-

formity with all of the foregoing rendered sixteen instructions for the water commissioner's guidance in the performance of his statutory duties.

It is the contention of appellants, as described by some fifty-seven specifications of error, that the orders made and the instructions given were beyond the scope and purport of the remedy provided by the above sections, particularly 7150. Their theory is that the water commissioner law never contemplated the distribution and supervision of water and water rights in the manner attempted by the judge. They assert that to uphold the orders and instructions given will, in effect, approve and confirm substantial modifications of the original decree, and will sanction the adjudication of substantive property rights, such as restricting the use of the water to a particular watershed or to certain parcels of land, in a manner not provided in the original decree. They assert that it was never intended by the legislature that such rights should be adjudicated and determined informally under a statute which infers that a written complaint shall constitute the only pleading necessary to invoke the remedy and secure the relief therein provided, which was the procedure pursued in the case at bar.

Respondents, on the other hand, contend that the proceedings did no more than determine that the water commissioner had not been distributing the water to the respective users in accordance with the adjudication, and that the orders and instructions given simply construed and clarified the provisions of the decree, and made certain the duties of the water commissioner in those respects.

It has previously been held by this court that under sections 7150 et seq., the whole question for determination in such a proceeding is whether the water commissioner has been distributing the water to the respective users in accordance with the decree or decrees. (*Gans & Klein Inv. Co.* v. *Sanford et al.,* 91 Mont. 512, 2 Pac. (2d) 808.) This logically tenders for consideration the question whether the judge properly instructed the water commissioner. The duties and authority of a water commissioner are prescribed by statute. He only has authority

to distribute the water to the parties "according to their rights as fixed by such decree or decrees." (Sec. 7136.) The law does not give him complete and exclusive jurisdiction to control the stream as such (*State ex rel. Reeder* v. *District Court,* 100 Mont. 376, 47 Pac. (2d) 653); nor is it simply his duty to distribute certain quantities of water to the parties without reference to the purposes, uses and needs adjudicated in the decree.

It then becomes obvious that the decree must be the yardstick by which the commissioner shall proceed, and, of necessity, must likewise constitute the yardstick for the consideration of instructions given to him by the court. It is, therefore, necessary to look to the controlling provisions of the decree for the authority of both court and commissioner. Whether the face of the decree itself is necessarily the sole authority regardless of its form, is one of the questions to be decided here.

In this instance, generally speaking, the total of the decreed rights exceeds by far the natural flow of the stream in normal periods, and certainly at times of low water. As usual in such matters, the decreed amounts were much less than those claimed by the parties to the action, and much less than would have been necessary to irrigate all their land.

With respect to the claims of Quigley, there was decreed to him and his predecessors an aggregate of 736 inches of water as of different dates of priority. The court specifically found that the lands irrigated by Quigley through the "Gallagher" ditch, 100 inches, and the "Hanley" ditch, 70 inches, were situated in the basin of Three Mile Creek in close proximity to and along both sides thereof, and the award was clearly made for that express purpose. Quigley also was awarded rights of 100 inches as of May 29, 1902, and 200 inches as of May 16, 1907. Permission was specifically given him to make beneficial use of the last-mentioned amounts in the Six Mile Creek basin and watershed, the same being outside and beyond the Three Mile Creek watershed. This use, however, was expressly stated to be subject to all other decreed rights as such appropriations and rights were fixed and mentioned in the court's findings

of fact and conclusions of law. Although 200 inches of these two rights appear to be junior in time to all other decreed rights on the stream, the other 100-inch right is senior in time to several others as fixed by the court. The remaining 266 inches of the Quigley rights were decreed without express restriction as to place of use, but they were necessarily awarded on the basis of the proof of beneficial use made thereof at the time of the decree and the facilities for conveying the water to the place of use.

The rights of the other users on the stream, including the Kimmerlys, were decreed to them in the same manner as the 266 inches to the Quigleys—some of whom also irrigated outside of the Three Mile watershed, viz: "for the purpose of irrigating the lands belonging to them and described in their [pleadings] and for domestic and other useful purposes, appropriated and diverted from said Three Mile Creek by means of ditches of sufficient capacity to carry the same certain of the waters of said Three Mile Creek of the following number of inches," etc.

Thus it will be observed that the same general language was used with reference to the Quigley 266-inch rights that was employed as to the other rights. The qualifying language as to certain of Quigley's rights above noted came in in another part of the decree and cannot fairly be said to have any special restrictive effect on the 266 inches of these particular Quigley rights. It is thus apparent that the court in its findings and conclusions did not specify particularly the acreage upon which the waters should be used other than upon the ranches described in the pleadings. An examination of the property plats of the parties introduced at the original trial and in this proceeding, in conjunction with the testimony taken at the more recent hearing, obviously shows that in some instances, at least, large areas of land were described in the pleadings far in excess of what the final awards could have irrigated, even assuming that the actual or contemplated use had been proven as to the entire holdings pleaded. With this explanation in mind, we proceed to consider the orders made and instructions given by the court to the water commissioner.

It is significant that, as a preface to the orders and instructions, the judge declared that "the *decree governs.*" Consequently, his first order was "that all waters of Three Mile Creek shall be admeasured and distributed to the various water users in accordance with their respective rights, as such rights are fixed and determined by the decree of this court dated June 10, 1913." The next eight orders, 2 to 9, inclusive, pertain to headgate and weir requirements imposed upon the various users, to reservoir measuring devices of the Quigleys, and to penalties to be imposed for failure of users to comply with the orders. These orders may be affirmed as written. We do not deem it necessary to set them out in full, as they are merely of a routine and administrative nature.

Order No. 10 reads as follows: "The defendants Quigley shall not by means of the Hanley Ditch or the Gallagher Ditch, or otherwise, convey or run any of the waters of Three Mile Creek into that certain reservoir, which has no outlet, called by them the 'fish pond,' and recently constructed by them, located on their lands easterly from Three Mile Creek, and should the defendants Quigley, contrary to these orders, convey any of the waters of Three Mile Creek through the Hanley Ditch or the Gallagher Ditch, or any ditch or ditches leading therefrom to said fish pond for the purpose of storing same therein, the water commissioner shall immediately shut down the headgates in each and all of said ditches so conveying such waters and keep such headgates closed down until further order of this court."

Appellants contend that this order is arbitrary and erroneous for the reason that it is not shown that the fish pond was ever used to the prejudice of other users. However, they admit that at no time involved in the controversy have waters been available for Quigley's water rights of 1902 and 1907, and it necessarily follows that the same must be true as to respondent Gravely's appropriations of 1903 and 1904, and respondent McIntosh's appropriation of 1904. A similar admission is made by appellants' failure to predicate error upon the court's finding of fact No. XII that at no time since the appointment of

the water commissioner had there been more than enough water to supply the needs of the parties under their decreed rights.

It is clear that the recent diversion of water into the "fish pond" constitutes a new attempted appropriation. As such it is governed by sections 7119 to 7127, inclusive, of the Revised Codes, enacted as Chapter 228 of the Session Laws of 1921, as a new appropriation from an adjudicated stream. Since the record does not disclose a decree establishing such an appropriation, there is nothing to warrant a diversion for that purpose, even if water had been shown to be available therefor, which is admittedly not the case here. The court cannot, therefore, be put in error for forbidding the distribution of water to appellant Quigley for that purpose.

Orders 11, 12 and 13 were with respect to the exchange of water from other creeks, Kimmerly headgates and weirs, and time for the installation of all headgates and weirs. These orders were proper.

We now come to a consideration of the sixteen instructions given by the court to the water commissioner. The substance of many of them is naturally but an expression of the contents of the orders just discussed. They are differentiated, of course, in that they provide the rules and instructions for the guidance of the water commissioner in his day-to-day administration of the rights on the creek. We find no fault with the instructions numbered 1, 2, 3, 4, 7, 8, 9, 10 and 16, and the finding of fact ▮ made in 12, and therefore sustain them as written. Appellants admit that instruction No. 5 is correct in allowing the use of Quigley's 1902 and 1907 appropriations totalling 300 inches outside of the Three Mile watershed only when all other decreed rights within the watershed were being supplied.

Instructions 6, 11, 12, 13, 14 and 15 may be considered together. They involve a matter that has been a constant cause of friction between water users since the beginning of irrigation in this western area, i. e., the change of the place and manner of use. As the question comes to us in this proceeding, the issue is complicated by the additional question of the right of a water user to increase the burden of use upon a given number

of decreed inches; or, in other words, to increase the number of acres that may be irrigated by the right, which in turn must of necessity increase the length of time that the number of inches of water may flow and therefore the total volume of water used during the irrigating season.

It seems clear that in the 1913 decree, as in most water right decrees, only two factors were taken into consideration: (1) The amount of land under actual or contemplated irrigation, and (2) the flowage of water required, which in the case of Kimmerly was fixed at 275 inches. The time factor, that is the length of time it would actually take during the season to irrigate the land with the allotted inches, and therefore the total amount of water to be used, was not included. It is readily apparent that 275 inches of water must necessarily mean one thing when 250 acres are irrigated, and quite another thing when 363 acres are irrigated.

The judge in this proceeding found as a fact that at the time of the decree the Quigley irrigating operations extended only to certain described lands within the watershed of Three Mile Creek, with the exception of the 300-inch appropriations of 1902 and 1907, heretofore discussed. He also found as a fact that the Kimmerlys and their predecessors were only irrigating certain described bottom lands at the time of the decree. The record supports these findings. Subsequent to the original decree, however, the Quigleys enlarged a ditch called No. 5 and began using any and all of their rights to Three Mile waters through that ditch and upon lands in the Six Mile watershed. This they did in the order of their priority of decreed rights, and also continued the irrigation of the lands originally irrigated in the Three.Mile watershed at the time of the decree.

The Kimmerlys, who were given an aggregate of 275 inches of water in the original decree, also made a new ditch running to lands other than those then under irrigation, but likewise continued to irrigate most of the lands that were then under irrigation. In each instance the use of water through the new, enlarged and different ditches, was confined to the irrigation of ranch land described in the original pleadings, and the use

was likewise confined to a given number of inches. There were charges of misuse and unlawful taking of water which were established to the satisfaction of the court, and upon which findings and orders were properly based; however, these latter incidents need not confuse the main issues.

It seems indisputable that a water user who has been decreed the right to use a certain number of inches of water upon lands for which a beneficial use has been proven, cannot subsequently extend the use of that water to additional lands not under actual or contemplated irrigation at the time the right was decreed, to the injury of subsequent appropriators. Obviously, if he could do so, junior appropriations might be of little or no benefit and the following three well-established principles of water rights by appropriation would be nullified: First, that place of diversion, or place or purpose of use, may be changed only "if others are not thereby injured" (sec. 7095, Rev. Codes); second, that subsequent appropriators of water take with notice of the conditions existing at the time they make their appropriations (*State ex rel. Crowley* v. *District Court,* 108 Mont. 89, 88 Pac. (2d) 23, 121 A. L. R. 1031); third, that "as between appropriators the one first in time is first in right" (sec. 7098); for by what constitutes an additional or third use or appropriation by the first user, an intervening appropriation by a second user, although earlier in time, might be entirely destroyed. Of course, water must be appropriated and decreed under our system for some useful and beneficial purpose. (Sec. 7094, Rev. Codes.) The proof of the existence of such purpose and the use applied to the same, as shown in the original cause, of necessity formed the basis for the awards finally given in the 1913 decree. The awards naturally had to take into consideration the capacity of ditches, as well as needs (*Peck* v. *Simon,* 101 Mont. 12, 52 Pac. (2d) 164), and prospective or future needs only if intention in that regard was manifested. (*Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575.) Since no such issue was shown in this case, the decree could not have contemplated such increase and made no attempt to do so. The mere fact that all the lands to which the additional

use of water has been applied were included within the description in the pleadings at the time of the decree, in no manner furnishes basis for, or justifies, the extended use in the absence of recitals in the pleadings and decree and proof in the record that the appropriations were made in anticipation of future needs, and a showing in this proceeding that there has been reasonable diligence since the decree in developing such needs.

As noted above, the statute gives a water user the right to change his point of diversion or place or manner of use only if in so doing he does not thereby injure others. (Sec. 7095, Rev. Codes; *Whitcomb* v. *Murphy*, 94 Mont. 562, 23 Pac. (2d) 980, and cases therein cited.) Such changes have been made here with respect to the Kimmerly rights and partially, at least, as to the Quigley rights. They have changed their points of diversion, and they are now apparently irrigating in new places or on new areas, parts of which are in a different watershed, and at the same time they are continuing to irrigate all or substantially all of the lands under irrigation at the time of the decree. The voluminous record and the findings made thereon in this proceeding amply support those facts and the conclusions of law are reasonable and correct; in other words, it seems quite beyond denial that since the date of the decree both the Quigleys and the Kimmerlys have largely increased their actual use of water.

There is no question that these changes have seriously injured respondents' rights, and that the enlarged use of water is in direct contravention of the principles laid down by the statutes and by all of the well-reasoned decisions which we have been able to find, notably the following: *Spokane Ranch & Water Co.* v. *Beatty*, 37 Mont. 342, 96 Pac. 727; *Toohey* v. *Campbell*, 24 Mont. 13, 60 Pac. 396; *Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401; *Brennan* v. *Jones*, 101 Mont. 550, 55 Pac. (2d) 697; *Gassert* v. *Noyes*, 18 Mont. 216, 44 Pac. 959; sec. 7095, Rev. Codes; 2 Kinney on Irrigation and Water Rights, secs. 784, 877, 878; *Fort Lyon Canal Co.* v. *Chew*, 33 Colo. 392, 81 Pac. 37; *Becker* v. *Marble Creek Irr. Co.*, 15 Utah, 225, 49 Pac. 892, 1119; *Handy Ditch Co.* v. *Louden Irr. Canal Co.*, 27

Colo. 515, 62 Pac. 847; *Hague* v. *Nephi Irr. Co.*, 16 Utah, 421, 52 Pac. 765, 67 Am. St. Rep. 634, 41 L. R. A. 311.

Here the trial court found that there was such additional ██ use by appellants Quigley and Kimmerly and that it resulted to the injury of respondents McIntosh and Gravely; and the findings are sustained by the record. But the appellants contend that for two reasons the court's orders to the water commissioner were erroneous: First, because not all the facts relative to the particular acres upon which the water was used at the time of the decree, or relative to the actual time of flow or volume of water to be used, were specified in the decree, and that the adjudicated owners were therefore entitled to use it anywhere and to any extent within their ranches therein described, no matter how much they increased its actual use, so long as they used only the flowage per unit of time decreed to them; second, because this is a mere proceeding for the instruction of the water commissioner as to his duties under the decree, and not one to adjudicate appellants' asserted rights under the decree. We shall discuss these points in reverse order.

In the first place, as stated above, it seems clear that the only reason for the appointment of a water commissioner is to distribute to the parties "the waters to which they are entitled, according to their rights as fixed by such decree" (sec. 7136), and that the sole purpose of this proceeding is to determine whether the commissioner is properly discharging that duty (sec. 7150). Obviously, those purposes cannot be accomplished without determining what the parties' rights are under the decree in the light of the circumstances; and that is why notice must be given to all the interested parties.

Admittedly there have been changes in the conditions since the entry of the decree; if not, the question of the parties' rights under it would not now be before us. Appellants contend that by reason of these changes, which they themselves have initiated, their rights cannot now be determined in this kind of proceeding under the original decree, but only under a new action resulting in a new decree. If so, any party by his

own acts, like those of the appellants in the present instance, can oust the old decree and force the persons adversely affected to institute a new action and seek a new adjudication. We have been able to find no authority for such contention, and can imagine none under our system of judicature and the principles relevant thereto.

If, on the other hand, the appellants should now contend that by reason of adverse user, prescription, abandonment or other change the old decree no longer governs, the burden would seem to be upon them to seek a new adjudication of their rights. In the absence of such new adjudication the decree must govern, and the statutory procedure in aid thereof under section 7150 is the most practical and effective means yet devised by legislatures or courts of giving it full effect.

The question is not what new rights the appellants have gained or what old rights the respondents have lost since the adjudication; if it were, the appellants must by proper action seek a new adjudication. The question rather is of the appellants' rights under the prior adjudication;—whether under it, without claiming new or additional rights, they are entitled to receive all the water which the commissioner has been giving them.

This brings us to appellants' first objection. Little question of the propriety of this proceeding or of the trial court's findings, conclusions, orders and instructions therein, would have arisen had the 1913 decree been more fully detailed. But as noted above it resembled most water right decrees in that in certain respects it did not completely describe the water rights adjudicated. In that respect it is entirely in accord with Chapter 81 of the Civil Code and especially sections 7107, 7108, 7109 and 7132, which provide for the appropriation and adjudication of water rights in terms of flow per unit of time, but without any expressed or suggested intention to destroy the basic principle of water rights that the appropriator's use of that flow is limited to the beneficial application made thereof, which necessarily also includes the element of time during which the flow is used, and therefore the element of total volume.

It must be apparent that although large areas of land were described by the parties, and large appropriations of water claimed, the trial court necessarily, under our laws relative to water rights, based its 1913 decree upon the evidence as to the land actually irrigated and the water beneficially applied thereto, although in the decree the irrigated land was not specifically described, and the water right was expressed in terms of flow per unit of time, without stating during how many such units of time it could be taken or otherwise defining the total volume of water to be used. Appellants' contention in effect is that because the court followed the almost uniform practice in these respects all such limits were removed, so long as they used only the decreed head of water within the limits of the ranches described, without regard to the showing of beneficial use prior to date of decree. Water rights are based upon beneficial use, and it is seldom, if ever, that an agricultural water right, adjudicated or otherwise, is used absolutely without any interruption throughout the irrigating season; therefore, the fact that no limitations in hours or days were expressly imposed on any of the water rights by the 1913 decree cannot logically be taken as an adjudication that the appropriations were of such absolutely uninterrupted flow.

At the original trial of the water right suit, it was necessary to show the court at least approximately the exact land irrigated, so as to enable it to determine the water needed, and beneficially applied; strictly speaking, it could have been described exactly in the decree as the basis for testing the limits of the appropriator's rights in controversies such as this. Or, to be still more specific, the number of hours or days of flowage could have been stated. (Weil on Water Rights in the Western States, 3d ed., 704; *Burr* v. *Maclay R. Co.*, 154 Cal. 428, 98 Pac. 260; *Hough* v. *Porter*, 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728.) But in any event, the court's failure to include either of those two elements could not serve to expand the early water rights beyond the beneficial uses claimed and proved, or to remove the well-established limitation of the appropriator's right to waters actually taken and beneficially applied. So to hold would be

to revolutionize the water right laws in practically every instance where rights have been decreed in the usual manner. As stated above, while 275 inches of water may be necessary for irrigation upon certain premises, such appropriation means one thing when 250 acres are irrigated, and quite another thing when 363 acres are irrigated; and one using a certain number of inches but an insignificant amount of water to irrigate a garden patch cannot as against intervening appropriators expand his use of it to irrigate a complete ranch. (1 Weil on Water Rights in the Western States, 3d ed., 508; *San Luis etc. Co.* v. *Estrada,* 117 Cal. 168, 48 Pac. 1075; *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222.) The mere fact that the decree awarding a water right in miners' inches or other flow measurement fails to describe the acreage actually irrigated or the time of flow or the volume of water actually used, cannot serve to remove all limitations upon its use in point of time or volume, and thus substantially to expand the early appropriations, to the detriment of subsequent appropriators. If a decree had that effect, there would be few adjudicated streams in the state in which any but the first few appropriations would be of any substantial value.

Such an expansion of the litigated rights would also nullify the well-established principle that a decree can only determine rights in accordance with the issues as framed in the proceeding (*Mannix & Wilson* v. *Thrasher,* 95 Mont. 267, 26 Pac. (2d) 373), which may perhaps have been altered by stipulation or evidence from those framed by the formal pleadings (*Wallace* v. *Goldberg,* 72 Mont. 234, 231 Pac. 56), and the equally well-established principle that a decree must be given a construction to harmonize with the facts and law of the case. (*Gans & Klein Inv. Co.* v. *Sanford,* 91 Mont. 512, 8 Pac. (2d) 808.)

If the decree were complete in all details relating to the actual amounts of water to be used under the various appropriations there would be no occasion, in construing it, to resort to pleadings or evidence. But in construing a decree which is lacking in certain elements or obscure or uncertain in meaning, reference may be made to the pleadings, judgment roll, or en-

tire record of the case. (*Sharkey* v. *City of Butte*, 52 Mont. 16, 155 Pac. 266; *Wallace* v. *Goldberg, supra; Brennan* v. *Jones,* 101 Mont. 550, 55 Pac. (2d) 697; 21 C. J. 689, sec. 862; 1 Freeman on Judgments, 5th ed., sec. 77; 19 Am. Jur. 285, sec. 414.) The latter text states that "reference may be had to the pleadings, *evidence,* and record of the case," citing as an authority *Wright* v. *Phillips,* 127 Or. 420, 272 Pac. 554. That statement may be correct *in toto,* since, as stated in the preceding paragraph the issues as framed by the pleadings may have been materially altered by the evidence; but it is unnecessary to decide that point here, since proof concerning the beneficial use of the water rights in question, both before and after the 1913 adjudication, was placed in evidence without objection by all the parties in this proceeding and was obviously necessary and relevant to explain the meaning and extent of the decreed rights so as to enable the court properly to direct the water commissioner concerning his duties. Appellants' failure to make any showing of an actual adjudication to them of water rights in uninterrupted flow during the irrigating season, or of any other than the normal use of their rights, clearly demonstrates that no injustice has been done them.

We feel constrained, therefore, to hold that in this proceeding under Code section 7150, it was proper for the trial court to consider the rights of the parties as the basis for its orders and instructions to the water commissioner; that in doing so under the usual form of decree awarding water rights in terms of flow measurement but failing to specify the exact acres irrigated or the time of flow or the volume of water actually used, it was not only proper but necessary to ascertain those other essential elements relative to the adjudicated water rights; and that the appellants cannot in this instance object to the court's manner of ascertaining those facts.

The order appealed from is hereby affirmed.

ASSOCIATE JUSTICES ERICKSON and ARNOLD concur.

MR. JUSTICE MORRIS dissents.

Mr. Justice Angstman concurring in part and dissenting in part:

I concur in most, but not all, of the foregoing opinion. To some extent I think it amounts to a modification or impeachment of the decree of 1913. It is, of course, elementary that this cannot be done. That decree was final and conclusive on the matter then in issue and litigated as between the parties and their successors, and subject to correction only on motion or by an appeal within the proper time. (Long on Irrigation, secs. 232, 242; Weil on Water Rights, 3d ed., sec. 1233.)

I recognize that when the decree is conditional, resort may be had to the facts upon which it was based in order to determine whether the condition was complied with. The following cases are typical: *Drach* v. *Isola,* 48 Colo. 134, 109 Pac. 748; *Crawford Clipper Ditch Co.* v. *Needle Rock Ditch Co.,* 50 Colo. 176, 114 Pac. 655; and see *Estes* v. *Crann,* 73 Colo. 438, 216 Pac. 517.

The decree of 1913 was not conditional but absolute. That decree, at least so far as it concerns the Kimmerly water right, decreed a stated number of inches for the purpose of irrigating lands described in the pleadings. It was without restrictions or limitations of any kind. To now resort to the evidence on which that decree was based and to restrict the right to the proof then introduced amounts to reading into that decree restrictions and limitations which should have been, but were not in fact, written into the decree. In my opinion that may not be done at this time. If this can be done, then there is but little, if anything, accomplished by securing an adjudication of water rights.

Rehearing denied July 8, 1940.